**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:18-CV-00223-GNS-RSE**

ANTONIO GILES ELLISON                                           PETITIONER

VS.

WARDEN KATHY LITTERAL                                          RESPONDENT

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND RECOMMENDATION**

Petitioner, Antonio Giles Ellison ("Ellison"), is a Kentucky prisoner who was convicted by a jury in Jefferson County, Kentucky of the following charges: (1) complicity to murder; (2) facilitation to trafficking in a controlled substance in the first degree while in possession of a firearm; and (3) fleeing or evading police in the first degree. Through counsel, Ellison filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 for relief from his convictions (DN 1) as well as a separate Memorandum (DN 9) in support of his Petition. Respondent, Warden Kathy Litteral ("Warden"), filed a Response in opposition. (DN 10). Ellison subsequently filed a Reply. (DN 15). This matter is ripe for adjudication.

Pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), the District Court referred this matter to the undersigned Magistrate Judge for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter. (DNs 3 & 11). For the reasons set forth herein, the Court **recommends** that Ellison's Petition for Writ of Habeas Corpus (DN 1) be **DENIED**.

# I.   **FINDINGS OF FACT**

a.   Background

Ellison is currently serving a life sentence for convictions stemming from the fatal shooting

of Ricco Cunningham. (DN 9 at Page ID# 30 & 33). Ellison was jointly tried, with two co-

defendants, before a Jefferson County, Kentucky jury. (*Id*. at Page ID# 33). The jury returned

guilty verdicts against Ellison on all counts. (*Id*.).

In its opinion affirming Ellison's convictions, the Kentucky Supreme Court summarized

the underlying facts of the case as follows[1]:

> Around seven p.m. on October 20, 2009, several Louisville Metro Police Officers
> were engaged in a traffic stop on the interstate 64 on-ramp near Portland and Lytle
> streets in Louisville. During the traffic stop, the officers heard gunshots from a
> nearby alley. They observed what was later determined to be a green Mazda leaving
> the alley. The officers pursued the vehicle in their police cruisers. After the Mazda
> eventually stopped, the [Petitioner] "T.J." Ellison exited the vehicle and fled the
> scene. One of the officers unsuccessfully pursued him on foot. The officers
> remaining at the scene arrested the vehicle's driver, Cli[f]ton Jones, and the
> backseat passenger, Dontay Rice. A revolver, a small amount of cocaine, and
> multiple cell phones were discovered in the vehicle.
>
> The body of the victim, Ricco Cunningham, was found in the alley from which the
> Mazda had exited. He died as a result of two gunshot wounds to the face. Ellison
> was eventually apprehended and arrested.
>
> Ellison was indicted by a Jefferson County grand jury for complicity to murder;
> complicity to first-degree trafficking in a controlled substance while in possession
> of a firearm; and first-degree fleeing or evading the police. Jones and Rice were
> indicted for complicity to murder; complicity to first-degree trafficking in a
> controlled substance while in possession of a firearm; and possession of a handgun
> by a convicted felon. Jones was additionally charged with operating a motor vehicle
> without a license. Rice, Jones, and Ellison were all tried together.
>
> The first jury trial began on November 29, 2011, and resulted in a mistrial. The
> second joint trial took place in February, 2013. Upon conclusion of the second trial,
> a Jefferson Circuit Court jury found Ellison guilty of complicity to murder;

---

[1] On a petition for habeas corpus brought pursuant to 28 U.S.C. § 2254, a presumption exists that the factual findings
of the state court are correct absent clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because Ellison does not
challenge the factual findings from his direct appeal, this Court will adopt the Kentucky Supreme Court's recitation
of the relevant facts.

facilitation to first-degree trafficking in a controlled substance while in possession of a firearm; and first-degree fleeing or evading the police. The jury recommended a sentence of life imprisonment for the complicity to murder conviction, 12 months for the facilitation to trafficking conviction, and three years for the fleeing or evading conviction. All sentences were ordered to run concurrently for a total sentence of life imprisonment.

*Ellison v. Commonwealth*, No. 2013-SC-000518-MR, 2014 WL 7238821, at *1 (Ky. Dec. 18, 2014) ("*Ellison I*").

   b.   Procedural History

Ellison directly appealed his convictions to the Kentucky Supreme Court, alleging five claims of error: (1) violation of the Fifth Amendment's prohibition against double jeopardy after Ellison's first trial ended in a mistrial; (2) violation of Ellison's Sixth Amendment right to counsel when the trial court limited Ellison's ability to consult with counsel during a lunch break; (3) the trial court erred in denying Ellison a separate trial from his nontestifying co-defendants, in violation of *Bruton*; (4) the admission of Ellison's nontestifying co-defendants' statements was a violation of the Confrontation Clause; and (5) the trial court erred in giving a limiting instruction *sua sponte* regarding alleged prior misconduct by Ellison. *See* (DN 1 at Page ID# 2) *and* (DN 10-2 at Page ID #106). The Kentucky Supreme Court affirmed the Jefferson Circuit Court judgment in its entirety, *Ellison I* at *6, and subsequently denied Ellison's petition for rehearing. (DN 10-2 at Page ID #253).

Thereafter, Ellison filed a motion in Jefferson Circuit Court to vacate, set aside, or correct his sentence, pursuant to Kentucky Criminal Rule 11.42. *See Ellison v. Commonwealth*, No. 2016-CA-000393-MR, 2017 WL 1829717, at *2 (Ky. Ct. App. May 5, 2017) ("*Ellison II*"). In considering this collateral attack, the circuit court denied Ellison's sole claim of ineffective assistance of counsel and determined that an evidentiary hearing was not required to adjudicate the RCr 11.42 motion. *Id*. Ellison appealed, and the Kentucky Court of Appeals affirmed the circuit

court's denial of Ellison's RCr 11.42 motion. *Id.* at *3. Ellison subsequently moved for discretionary review, which the Kentucky Supreme Court ultimately denied. (DN 10-3 at Page ID# 352).

Finally, Ellison timely filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.§ 2254, asserting four grounds for relief.

## II.   <u>CONCLUSIONS OF LAW</u>

a.   <u>Standard of Review</u>

The federal habeas statute, as amended in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides relief from a state conviction if the petition satisfies one of the following conditions:

> The [state court's] adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States has carefully distinguished federal habeas review from review on direct appeal. As to § 2254(d)(1), when the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010). Instead, the Court must ask "whether

the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Id*. at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the petition if (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." *Id*. at 405-06, 412-13.

As to § 2254(d)(2), a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). This subsection applies when a petitioner challenges the factual determinations made by the State court. *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001) (challenging the state court's determination that the evidence did not support an aiding and abetting suicide instruction); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (challenge to state court's factual determination that Sheriff has not seen letter prior to Clark's trial).

Recently, the Supreme Court clarified that in making the § 2254(d)(1) determination, a federal court in habeas corpus must confine its review to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Courts have since held that *Pinholster* logically applies to any § 2254(d)(2) determination as well. *See, e.g., Sanders v. Curtin*, 529 F. App'x 506, 517 n. 5 (6th Cir. 2013) ("Although *Pinholster* specifically addressed subsection (d)(1), subsection (d)(2), by its terms, also requires a federal court to limit its review to the record that was before the state court.").

　　b.　Discussion

Following the state court's denial of his direct appeal, Ellison did not seek further review of the Kentucky Supreme Court's decision by filing a petition for certiorari in the United States Supreme Court. (DN 1 at Page ID# 3). Rather, on April 10, 2018, Ellison filed the instant Petition for Writ of Habeas Corpus. (*Id.*). In the Petition, Ellison presents essentially the same issues that were presented to the Kentucky Supreme Court on direct appeal. Thus, in light of the deference due to the state court upon review of a petition brought pursuant to 28 U.S.C. § 2254, the state court's opinion will be quoted from liberally.

### i. Ellison's Claims from Direct Appeal

#### 1. Ground One – Double Jeopardy

In his Petition, Ellison's first ground for habeas relief alleges that Ellison's second trial was barred after the trial court, absent a finding of manifest necessity, granted a mistrial without a knowing, voluntary waiver of Ellison's double jeopardy rights. (DN 1 at Page ID# 5); *see also* (DN 9 at Page ID# 35). In other words, Ellison claims that the trial court's colloquy with Ellison's trial counsel was inadequate, and therefore Ellison's double jeopardy waiver was insufficient. (*Id.* at Page ID# 37). Thus, because Ellison never requested nor consented to the motion for a mistrial, and absent manifest necessity, the retrial of Ellison was barred. (*Id.*).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794 (1969), "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *U.S. v. Dinitz,* 424 U.S. 600, 606 (1976). "As part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'" *Oregon v. Kennedy,* 456 U.S. 667, 671–72 (1982) (quoting *Wade v. Hunter,* 336 U.S. 684, 689 (1949)). Jeopardy

attaches when the original jury panel is seated and sworn. *Crist v. Bretz,* 437 U.S. 28, 38 (1978). However, the Double Jeopardy Clause does not act as an absolute bar to reprosecution in every case. Rather, once jeopardy attaches, a defendant may not be retried after a mistrial has been declared unless (1) there is a "manifest necessity" for a mistrial, or (2) the defendant either requests or consents to a mistrial. *Dinitz,* 424 U.S. at 606–07; *see also Watkins v. Kassulke,* 90 F.3d 138, 141 (6th Cir. 1996).

Applying these principles to Ellison's claim on direct appeal, the Kentucky Supreme Court determined that there was no jeopardy violation. *Ellison I* at *2. More specifically, the court noted that "[p]rior to the trial court's order granting a mistrial in the present case, Ellison's counsel expressly stated the following regarding the double jeopardy issue: 'just to make sure that the record is clear, yes, we do waive that argument as it relates to double jeopardy for mistrying the case to this jury.'" *Id.* Of particular significance, the Kentucky Supreme Court observed that Ellison's trial counsel "also stated he had advised Ellison of the [double jeopardy] issue and that Ellison was present during the proceedings. Therefore, the record unequivocally demonstrates that Ellison's counsel consented to this mistrial on behalf of his client." *Id.*

That notwithstanding, Ellison's Petition maintains his argument that the double jeopardy waiver in this case was deficient. (DN 9 at Page ID# 37). Additionally, Ellison contends that the constitutional right against jeopardy is a fundamental protection that a defendant must knowingly and voluntarily waive. *Id.* In rejecting this argument on direct appeal, the Kentucky Supreme Court noted that because "Ellison [] failed to present any authority stating that the double jeopardy defense cannot be waived through counsel[,] . . . the trial court did not err by denying Ellison's motion to dismiss double jeopardy grounds." *Ellison I* at *2.

The Supreme Court has recognized four fundamental choices that a criminal defendant must always make. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to [1] plead guilty, [2] waive a jury, [3] testify in his or her own behalf, or [4] take an appeal."). Consequently, decisions regarding a motion for a mistrial are not "fundamental decisions" that can only be made by the defendant. *See Davis v. Holloway*, No. 3:14-02348, 2015 WL 5882326, at *4 (M.D. Tenn. Oct. 8, 2015). Rather, the Supreme Court "has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." *Dinitz*, 424 U.S. at 609, n. 11 (1976). Thus, the Sixth Circuit, citing *Jones*, recognized that where "defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant and removes any bar to reprosecution, regardless of whether the defendant participates in the decision." *Watkins,* 90 F.3d at 143. A survey of case law in other circuits shows that every other circuit to have addressed this issue has adhered to the Sixth Circuit's position on "fundamental decisions" set forth in *Jones* and *Watkins*. *See United States v. Chapman,* 593 F.3d 365, 368 (4th Cir. 2010) (concluding that "decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client."); *United States v. Allick,* 386 Fed. App'x 100, 104-05 (3d Cir. 2010) (rejecting Allick's argument challenging a mistrial on the ground that he was neither present during the in-chambers conference discussing mistrial nor consulted regarding the mistrial. Like other circuits, the Third Circuit held that the decision "to request or consent to a mistrial is a strategic decision that ultimately rests with counsel."); *United States v. Burke,* 257 F.3d 1321, 1324 (11th Cir. 2001) ("We . . . reject Defendant's contention that the decision to request a mistrial is a fundamental decision that only a defendant can make."); *United States v. Washington,* 198 F.3d 721, 723 (8th

Cir. 1999) ("Washington argues that the defendant must be allowed to make the ultimate decision on whether to request a mistrial. We disagree and hold that the decision to make such a request is a strategic decision for counsel."); *Galowski v. Murphy,* 891 F.2d 629, 639 (7th Cir. 1989) ("The decision whether to move for a mistrial or instead proceed to judgment with the expectation that the client will be acquitted is one of trial strategy."). Therefore, decisions regarding mistrials belong to the attorney, not the client; and the consent of counsel is treated as the consent of the defendant. *See* C. Torcia, 1 Wharton's Criminal Law § 63 (15th ed. 2018); a*ccord United States v. Williamson*, 656 Fed. App'x 175, 180 (6th Cir. 2016) ("Generally, consenting to a mistrial is a strategic decision that an attorney can make without asking for the defendant's input."); *Pryor v. Bock*, 261 F. Supp. 2d 805, 809 (E.D. Mich. 2003), *aff'd*, 116 Fed. App'x 565 (6th Cir. 2004) ("Moreover, acting on a defendant's behalf, counsel may provide the requisite consent [to a mistrial].").

Accordingly, the Kentucky Supreme Court's determination that Ellison's retrial was not barred by the Double Jeopardy Clause of the Fifth Amendment because Ellison consented to the granting of the mistrial and explicitly waived, through his counsel, any double jeopardy defense was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were the court's decisions based on an unreasonable determination of the facts. Therefore, Ellison's first ground for relief in his habeas Petition is without merit, and the Court recommends denying this claim.

2.  Ground Two – Right to Counsel

In his second ground for habeas relief, Ellison claims that he was denied his Sixth Amendment right to counsel when the trial court limited his ability to consult with counsel during a break in his testimony at trial. (DN 1 at Page ID# 7); *see also* (DN 9 at Page ID# 38). Following

Ellison's direct testimony and cross-examination by counsel for one of Ellison's co-defendant's, the trial court recessed for lunch. *Ellison I* at *3. During the break, the trial court restricted the subject of conversation between Ellison and his counsel to two topics the court considered "fair game:" (1) Ellison's previous conviction for carrying a concealed deadly weapon, a 9 mm; and (2) jail phone calls the Commonwealth sought to introduce. *Id. See also* (DN 9 at Page ID #38).

In dismissing this claim on direct appeal, the Kentucky Supreme Court held that the trial court did not err in restricting Ellison's ability to consult with counsel because Ellison did not have a constitutional right to discuss his testimony with his attorney while his testimony was in progress. *Ellison I* at *3. In its opinion, the Kentucky Supreme Court analyzed two precedential cases. First, the court addressed *Geders v. United States*, 425 U.S. 80 (1976), in which "the United States Supreme Court [] held that a court cannot prevent a criminal defendant from having any consultation with his attorney during an overnight recess." *Ellison I* at *3 (citing *Geders*, 425 U.S. at 91). Almost contrastingly, the state court also discussed *Perry v. Leeke*, 488 U.S. 272 (1989), in which the Supreme Court held that "it is constitutionally permissible for a trial court to bar a testifying defendant from consulting with his attorney during a briefer recess." *Ellison I* at *3 (citing *Perry*, 488 U.S. at 283-84). In either situation, the state court noted that "consultations with counsel concerning a defendant's ongoing testimony are not permitted. In [Ellison's] case, the jury's lunch recess lasted for approximately 75 minutes. Therefore, this case is much more analogous to a brief recess as in *Perry* rather than the overnight recess in *Geders*." *Ellison I* at *3 (internal citation omitted). Accordingly, the Kentucky Supreme Court found "that the trial court's admonition to counsel did not violate Ellison's Sixth Amendment right to counsel." *Id*.

In light of the above-quoted portion of the Kentucky Supreme Court's opinion, it is clear that the court did not unreasonably apply clearly established federal law. First, the Kentucky

Supreme Court correctly looked to *Geders* and *Perry* to resolve Ellison's Sixth Amendment right to counsel claim. *Id*. Ultimately, the state court found that *Geders* was distinguishable because the facts presented in Ellison's case did not involve the trial court's complete denial of a defendant's right to consult with his attorney, as was evident in *Geders*. *Id*. (citing *Beckham v. Commonwealth*, 248 S.W.3d 547, 553 (Ky. 2008)). Rather, the trial court "merely qualified the issues which were proper for discussion and correctly excluded consultation regarding Ellison's testimony" in an attempt "to protect the integrity of the proceedings" and "not impermissibly limit all attorney-client contact during the . . . recess." *Ellison I* at *3 (quoting *Beckham*, 248 S.W.3d at 553-54).

Second, *Perry* explains that "when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying." *Perry*, 488 U.S. at 281. Although the defendant "has an absolute right to [] consultation before he begins to testify, [] neither [the defendant] nor his lawyer has a right to have the testimony interrupted in order to give [the defendant] the benefit of counsel's advice." *Id*. Consequently, the United States Supreme Court held that a defendant does not have "a constitutional right to discuss [his] testimony while it is in process." *Id*. at 284; *see also Moore v. Parker*, 425 F.3d 250, 255 (6th Cir. 2005) (extending *Perry* to include admonition given to defendant during 45-minute lunch break not to consult with anyone about his testimony). Thus, the Kentucky Supreme Court correctly upheld the trial judge's prohibition from discussing Ellison's testimony during the 75-minute lunch recess. *Ellison I* at *3.

Accordingly, as Ellison did not have a constitutional right to consult with his attorney while his testimony was in progress, the Kentucky Supreme Court's decision was neither contrary to, nor an unreasonable application of clearly established federal law. Therefore, the Court recommends that relief be denied as to this claim.

3.   <u>Ground Three – Confrontation Clause</u>

Ellison's third ground for habeas relief claims that the "trial court erred in denying Ellison's motion for a separate trial from his non-testifying co-defendants, whose statements to the police, incriminating Ellison, were admitted at trial." (DN 1 at Page ID# 8); *see also* (DN 9 at Page ID# 44). More specifically, Ellison argues that Jones' and Rice's statements, which "simply substitute[ed] '[Li'l] Mikey' for 'Antonio Ellison,'" were not sufficiently redacted and thus, the admission of those statements violated the Confrontation Clause of the Sixth Amendment. (*Id*. at Page ID# 46-47). In the Response, the Warden notes that "Ellison – in what appears to be a rearranged regurgitation of his direct appeal brief to the Kentucky Supreme Court – fails to recognize that [the state] court agreed there was a confrontation violation, but the violation was harmless beyond a reasonable doubt." (DN 10 at Page ID# 82). In Reply, Ellison beefs up his claim and argues that the confrontation violation was not harmless. (DN 15 at Page ID# 364). Rather, "the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" (*Id*.) (quoting *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

In the context of habeas review, petitioners are generally not entitled to relief based on a constitutional error at trial unless "they can establish that [the error] resulted in 'actual prejudice.'" *Brecht,* 507 U.S. at 637 (citing *United States v. Lane,* 474 U.S. 438, 449 (1986)); *see Fry v. Pliler,* 551 U.S. 112, 121 (2007) (stating that the *Brecht* standard of review is still applicable post-AEDPA). Under the *Brecht* standard, actual prejudice is present and thus "an error requires reversal only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht,* 507 U.S. at 631 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). Accordingly, "Confrontation Clause errors are subject to harmless-error analysis." *Vasquez v. Jones,* 496 F.3d 564, 574 (6th Cir. 2007).

To determine whether a Confrontation Clause error is harmless under *Brecht,* courts use the factors discussed in *Delaware v. Van Arsdall,* 475 U.S. 673 (1986). *Vasquez,* 496 F.3d at 575. The *Van Arsdall* factors include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Van Arsdall,* 475 U.S. at 684.

Applying these factors to this instance, we cannot conclude that the confrontation violation at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 631. As the Kentucky Supreme Court correctly observed, "[w]hile the references to 'Li'l Mikey' constitute insufficient redaction, this error is harmless beyond a reasonable doubt." *Ellison I* at *4. Thus, in analyzing Ellison's argument on direct appeal, the court considered the information provided via admission of the improperly redacted statement as well as the following information provided directly by Ellison at trial:

> Ellison's trial theory was self-defense. He testified that he was the person sitting in the front passenger seat of the Mazda and that he contacted the victim on the night of the murder in order to buy drugs from him. On cross, he admitted that he had recently engaged in narcotics trafficking during the month of October, 2009. Ellison also admitted to fleeing from the police after the murder. While fleeing, he discarded the 9 mm hand gun that was used to kill the victim. A forensic expert determined that the two shell casings found near the victim's body were fired from that weapon. Evidence was also introduced that, while in jail awaiting trial, Ellison wrote letters and made phone calls attempting to enlist his friends to take action that would prevent a key witness from testifying.

*Id*. Furthermore, the Kentucky Supreme Court noted that "[t]he trial court also admonished the jury that certain evidence may be considered for one defendant but not for another, and repeatedly instructed the jury concerning the appropriate use of the co-defendants' statements prior to the admission of each." *Id*. For these reasons, although the Court agrees that there was a Confrontation

Clause violation, the Court concludes that to the extent that Ellison's non-testifying co-defendants' statements had any influence on the jury, such information was corroborated by other evidence and witnesses, including Ellison himself.

Accordingly, because the trial court's confrontation violation did not have a substantial and injurious effect or influence in determining the jury's verdict under the *Brecht* standard, the Court finds that the error was harmless. Therefore, the Court will not recommend relief on this claim.

ii.   Ellison's Post-Conviction RCr 11.42 Claim

Ellison's habeas Petition also raises a single claim of ineffective assistance of trial counsel that he originally raised in his RCr 11.42 motion for post-conviction relief. (DN 1 at Page ID# 10). Claims of ineffective assistance of counsel are evaluated under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland*, 466 U.S. at 687. The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 688, 690. Surmounting *Strickland's* high performance bar is never an easy task. *Premo v. Moore*, 562 U.S. 115, 122 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When the Court assesses counsel's performance, it must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not

whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Establishing the required prejudice is a likewise high bar. The prejudice inquiry compels the defendant "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one part. *Id*. at 697.

### 4.  Ground Four – Ineffective Assistance of Counsel

In his original RCr 11.42 motion, Ellison alleged that his trial counsel was ineffective for "failing to adequately advise [Ellison] regarding the mistrial, and waiving his Double Jeopardy rights without [Ellison's] informed consent . . . without which, [Ellison] would not have been convicted and sentenced to life in prison." (DN 10-3 at Page ID# 260-61). Ellison maintains that had trial counsel "not waived his objection to the mistrial, there is a 'reasonable probability' that the Double Jeopardy Clause of the United States and Kentucky Constitutions would have prohibited [Ellison's] retrial." (*Id*. at Page ID# 261). The circuit court, however, denied this claim, explaining that there was no necessity for a hearing on this issue because the Kentucky Supreme Court already tendered a ruling upholding Ellison's conviction. (*Id*. at Page ID# 268). In citing to the Kentucky Supreme Court's opinion, the court concluded that "the very argument made to [the court] has been addressed by the highest judicial authority in the Commonwealth, the Kentucky Supreme Court (KSC). There it was asserted, as it is here now, that [Ellison] did not consent to waiving his putative double jeopardy defense. The KSC said it doesn't matter. That ends the discussion." (*Id*. at Page ID# 269).

Ellison's claim evolved when he sought review of the circuit court's denial from the Kentucky Court of Appeals. In his plea to the Kentucky Court of Appeals, Ellison argued that the trial court erred in summarily overruling his RCr 11.42 motion without a[n evidentiary] hearing, because [Ellison] presented a meritorious claim of ineffective assistance of counsel supported by specific facts. (*Id*. at Page ID# 278). Ellison further provided that "[a] hearing is required if there is a 'material issue of fact that cannot be determined on the face of the record.'" (*Id*. at Page ID# 280) (citing RCr 11.42(5) *and Hodge v. Commonwealth*, 68 S.W.3d 338, 342 (Ky. 2001)). However, upon consideration of Ellison's argument, the Kentucky Court of Appeals determined that the Kentucky Supreme Court's opinion was a proper basis for the circuit court's denial of Ellison's RCr 11.42 motion. *Ellison II* at *3. More specifically, the Kentucky Court of Appeals noted that the "Kentucky Supreme Court expressly found that [Ellison's trial] counsel's waiver of the double jeopardy defense was efficacious, i.e., *not erroneous*." *Id*. (emphasis in original). Consequently, "[a]s a serious error is a necessary prerequisite to a finding of ineffective assistance and as no error can be found on this issue, [Ellison's] claim of ineffective assistance must necessarily fail." *Id*. The Kentucky Court of Appeals went on to provide that "even if such an error were present, [Ellison] has offered no basis for concluding that the outcome of the proceeding would have been different but for the purported error." *Id*. Accordingly, the Kentucky Court of Appeals was "not persuaded by [Ellison's] contention that the instant argument is fundamentally different from the issue addressed on direct appeal. Finally, as [Ellison's RCr 11.42] Motion was justiciable from the face of the record, no hearing was required. Accordingly, [the Kentucky Court of Appeals found] no error." *Id*.

Now, in his fourth and final ground for habeas relief, Ellison attempts to revive his original argument to the trial court, claiming that he was denied effective assistance of counsel when his

trial counsel failed to adequately advise him regarding the mistrial and ultimately waived Ellison's double jeopardy rights without his informed consent. (DN 1 at Page ID# 10); *see also* (DN 9 at Page ID# 50). Because of this alleged failure, Ellison claims that "this basic trial choice, involving a decision regarding the objectives of the representation," was not properly waived because trial counsel failed to first obtain Ellison's "fully-informed and publicly-acknowledged consent." (*Id*. at Page ID# 52).

The post-conviction court correctly identified *Strickland* as controlling with respect to Ellison's ineffective assistance ground for relief. *Ellison II* at *2-3. Thus, in analyzing *Strickland's* deficient performance prong, the Court notes that, as provided above, the Sixth Circuit has held, *inter alia*, that "consenting to a mistrial is a strategic decision that an attorney can make without asking the defendant's input." *Williamson*, 656 F. App'x at 180 (citing *Watkins*, 90 F.3d. at 143). Hence, trial counsel's performance was not deficient, and Ellison's claim must fail. *See Ellison II* at *3.

That notwithstanding, the Court also notes that pursuant to *Strickland's* prejudice prong, Ellison has not demonstrated that there is a reasonable probability that, but for trial counsel's alleged error, the result of his proceeding would have been different. *Strickland*, 466 U.S. at 649; *see also Ellison II* at *3.  Again, Ellison's claim is simply without merit.

Accordingly, Ellison does not prove the Kentucky Court of Appeals' decision was contrary to or an unreasonable application of *Strickland*. Therefore, because Ellison's fourth and final ground for relief fails to meet the standard for granting the Writ under § 2254(d), the Magistrate Judge recommends denying relief on this claim.

iii.   Certificate of Appealability

The final question is whether Ellison is entitled to a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B) on any or all of the four grounds raised in his habeas Petition. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). When the Court rejects a claim on the merits, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong for this Court to issue a COA. *Slack*, 529 U.S. at 484.

Here, none of the grounds raised by Ellison could be debated by reasonable jurists. The Kentucky Supreme Court's determinations regarding Ellison's rights under the Fifth Amendment's Double Jeopardy Clause and the Sixth Amendment's right to counsel are well in-line with the controlling precedent of the United States Supreme Court. Ellison does not explain otherwise or cite to any decision that would call these conclusions into question. Therefore, the Court does not recommend a COA issue as to Grounds One and Two of Ellison's Petition.

Ellison's remaining claim from his direct appeal, the Confrontation Clause claim, is also not likely to be found debatable or wrong by reasonable jurists. Ellison has not made a substantial showing that the confrontation violation was not harmless, and thus, the Court does not recommend a COA issue as to Ground Three.

Likewise, the Court finds the assessment of Ellison's ineffective assistance of counsel claim under *Strickland* would not be challenged by reasonable jurists because Ellison cannot demonstrate deficient performance or establish prejudice from counsel's alleged error. As such, the Court does not recommend a COA issue as to Ground Four.

Accordingly, the Court recommends that a COA be denied as to all grounds for relief raised by Ellison in his habeas Petition.

iv.  Evidentiary Hearing

Approximately one year after Ellison initially filed the subject Petition for Writ of Habeas Corpus (DN 1), Ellison, through counsel, subsequently filed a Motion for Evidentiary Hearing. (DN 16). In the Motion, Ellison reiterates his request for the Court to grant habeas relief pursuant to 28 U.S.C. § 2254, or, in the alternative, Ellison requests an evidentiary hearing on his Petition. (*Id*. at Page ID# 368). In support of this Motion, Ellison claims that an evidentiary hearing would permit the opportunity to establish facts in the record that would advance his claims for habeas relief. (*Id*.).

In opposition, Warden timely filed a Response to Ellison's Motion for Evidentiary Hearing. (DN 17). In the Response, Warden maintains that the claims raised in Ellison's Petition were adjudicated on the merits in state court. (*Id*. at Page ID# 371, 374). Therefore, an evidentiary hearing is not proper because Ellison's claims for habeas relief are subject to deference based solely on the record as it was before the state court (*Id*. at Page ID# 376).

A federal district court sitting to consider a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 has the inherent discretion to order an evidentiary hearing when disputed issues of material fact otherwise cannot be resolved from examination of the state court record. *See Sawyer v. Hofbauer*, 299 F.3d 605, 609-10 (6th Cir. 2002) ("We have previously recognized the discretion and 'inherent authority that a district court always has in habeas cases to order evidentiary hearings to settle disputed issues of material fact.'") (quoting *Abdur'Rahman v. Bell*, 226 F.3d 696, 706 (6th Cir. 2000)).

Upon review of Ellison's Motion for Evidentiary Hearing, the Court, in the exercise of its discretion, concludes that such a hearing is neither required nor warranted under Rule 8 of the Rules Governing § 2254. The state court record as it presently exists is more than sufficient for the

Court to thoroughly address the claims asserted in support of Ellison's Motion as well as his habeas Petition. Further, Ellison's Motion fails to specify what facts would be established by an evidentiary hearing and how they might entitle him to relief. *See Williams v. Bagley*, 380 F.3d 932, 936 (6th Cir. 2004) (citing *Stanford* v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) ("[T]he district court did not abuse its discretion in denying Williams's request, given his failure to specify which of his claims warranted an evidentiary hearing and what could be discovered through an evidentiary hearing."). Thus, Ellison has not persuaded the Court that were such an evidentiary hearing to be held, he might establish facts that would entitle him to relief on any of the grounds raised in his Petition.

Accordingly, Ellison's Motion for an Evidentiary Hearing (DN 16) must be denied.

### III.    <u>RECOMMENDATION</u>

For the reasons provided above, and the Magistrate Judge, having made findings of fact and conclusions of law, **recommends** that Ellison's Petition for Writ of Habeas Corpus (DN 1) be **DENIED**.

The Court further **recommends** that a Certificate of Appealability be **DENIED** as to each of Ellison's claims.

Additionally, the Court also **recommends** that Ellison's Motion for Evidentiary Hearing (DN 16) be **DENIED**.

Regina S. Edwards, Magistrate Judge
United States District Court

May 2, 2019

20

## <u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn,* 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:          Counsel of Record