RECEIVED

# United States Court of Appeals
# for the Sixth Circuit

MAR 0 1 2024

KELLY L. STEPHENS, Clerk

**MOTION UNDER 28 U.S.C. § 2244 FOR LEAVE TO FILE A
SECOND OR SUCCESSIVE HABEAS CORPUS PETITION UNDER 28 U.S.C. §2254
BY A PERSON IN STATE CUSTODY**

---

Case Number (to be provided by the court): _____

Name: Antonio Ellison

Prisoner Number: 262062

Place of Confinement: Southeast State Correctional Complex

---

## Instructions

(1)  **Purpose.** Use the attached form to file a motion under 28 U.S.C. § 2244 for an order authorizing the district court to consider a second or successive petition under 28 U.S.C. § 2254.*

      \* If the district court transferred your petition or motion to this court and you do not feel that you should be required to obtain prior authorization, you must still complete this form. You may, however, attach an additional statement explaining to the court why you oppose the transfer.

(2)  **Form.** You must answer all questions completely and concisely in the proper space on the form. Attach additional pages if necessary to list all of your claims and the facts upon which you rely to support those claims. Your failure to provide complete answers may result in the court of appeals denying your motion for authorization.

(3)  **Standard of Review.** In accordance with the Antiterrorism and Effective Death Penalty Act of 1996, as codified at 28 U.S.C. § 2244(b), before authorization to file a second or successive petition can be granted by the United States Court of Appeals, the movant must make a prima facie showing that he or she satisfies either of the following conditions found in 28 U.S.C. § 2244(b)(2):

---

(A)    The claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court, that was previously unavailable; **or**

(B)(i)   The factual predicate for the claim could not have been discovered previously through the exercise of due diligence; **and**

   (ii)   The facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Pursuant to 28 U.S.C. § 2244(b)(1), the court will not consider claims that were presented in a prior 28 U.S.C. § 2254 petition.

(4)    **Attestation.** You must sign the motion at the end of page 9. Failure to sign the motion for authorization may result in the court of appeals denying your motion.

(5)    **Copies.** If they are reasonably available, you must file with your motion the magistrate judge's report and recommendation and the district court's opinion from your prior 28 U.S.C. § 2254 proceedings.

(6)    **No Filing Fee.** There is no fee for filing a motion under 28 U.S.C. § 2244 for an order authorizing the district court to consider a second or successive petition under 28 U.S.C. § 2254.

(7)    **Filing.** When this motion for authorization is fully completed, **mail the original (with all documents attached) to the below address**. The court of appeals will serve your motion and attachments on the appropriate state Attorney General using the electronic case filing (ECF) system.

<div align="center">

Sixth Circuit Court of Appeals
Clerk's Office
Room 540, Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, OH 45202

</div>

# MOTION UNDER 28 U.S.C. § 2244 FOR LEAVE TO FILE A SECOND OR SUCCESSIVE HABEAS CORPUS PETITION UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY

**RECEIVED**

MAR 0 1 2024

KELLY L. STEPHENS, Clerk

## A. STATE COURT PROCEEDINGS

1. (a) Name and location of the court that entered the judgment of conviction under attack:

Jefferson County Circuit Court Louisville, Kentucky

(b) Case number: 09-CR-3445

2. Date of judgment of conviction: 6-28-2013

3. Length of sentence: life with parole after 20 years

4. Offense or offenses for which you were convicted:

Complicity to murder facilitation to First degree

trafficking in a Controlled substance while in possession of fire arm + first degree of Fleeing or evading police

5. Did you appeal the conviction and sentence? YES ☑ NO ☐

6. If you appealed, give the name of court, the result, and the date of the result:

Kentucky Supreme Court (Affirmed December 18 2014)

## B. PRIOR FEDERAL HABEAS CORPUS PROCEEDINGS

7. Have you previously filed a habeas corpus petition or other application for collateral relief **in any federal court** related to this conviction and sentence?

YES ☑ NO ☐ If "yes," how many? One

If more than one, attach a separate page providing the information required in items 7(a) through 7(g) for the additional petitions, applications, or motions.

As to the **first** federal petition, give the following information.

(a) Name of court: U.S. District Court Western district of Kentucky

(b) Case number: 3:18-CV-00223-GNS-RSE

(c) Nature of proceeding: 28 U.S.C. 2254

(d) Claims raised (list **all** claims, using extra pages if necessary):

(1) Court Violated double Jeopardy rights (2) Violated right to Counsel by limiting Conversation with Attorney during lunch break (3) Court erred in denying Separate trials and (4) Violated the Confrontation Clause with the admittance of statements of his non testifying Codefendants

(e) Result and date of result: dismissed with prejudice by Chief Judge Greg N. Stivers September 30, 2019

(f) Did you appeal? YES ☑ NO ☐

(g) If you appealed, give the result and the date of the result:

Certificate of appealability denied on March 19, 2020

## C. PROPOSED CLAIMS IN CURRENT MOTION FOR AUTHORIZATION

8.  State concisely the claim (or claims) that you **now** wish to raise. Summarize briefly the facts supporting each ground.

**Claim One:** Ellison was denied a fair trial as a direct result of police misconduct when detective Jon Lesher purposely suppressed exculpatory evidence. A eyewitness statement made to him personally in violation of U.S. Constitution 6th and 14th amendments

Supporting **FACTS** (tell your story briefly without citing cases or law):

Ms Griffith contacted my family after seeing a birthday post she informed them she was a friend of Nico Cunningham, she seen the shooting and she knew I was innocent. After she seen me on the news charged with murder she contacted detective Lesher her statement was taken over the phone

Was this claim raised in a prior federal petition, application, or motion?

YES ☐    NO ☑

Does this claim rely on a "new rule of constitutional law"?    YES ☐    NO ☑

If "yes," state the new rule of law (give case name and citation):

_____

_____

_____

Does this claim rely on newly discovered evidence?     YES ☑     NO ☐

If "yes," briefly state the new evidence and why it was not previously available:

Ms. Griffith was not a testifying witness nor was her statement known to me or my attorney. This witness statement was unavailable due to police misconduct by Det. Jon lesher

**Claim Two:** Ellison avers that newly discovered facts consistent with Brady warrant relief pursuant to 28 U.S.C. 2244 (b)(2)(b) based on the misconduct on part of prosecution

Supporting **FACTS** (tell your story briefly without citing cases or law):

After post conviction litigation concluded I discovered a investigation report never disclosed by the Commonwealth which demonstrated Jon lesher committed perjury during a critical suppression hearing

Was this claim raised in a prior federal petition, application, or motion?

         YES ☐     NO ☑

Does this claim rely on a "new rule of constitutional law"?

YES ☐    NO ☑

If "yes," state the new rule of law (give case name and citation):

_____

_____

_____

_____

_____

Does this claim rely on newly discovered evidence?    YES ☑  NO ☐

If "yes," briefly state the new evidence and why it was not previously available:

An investigative report that detailed John Irshers Identification procedure, that he showed one photo instead of multiple to officer banks. This document was withheld until after trial and not in the original discovery in record I had no knowledge of its existence

**Claim Three:** The trial Judge engaged in judicial misconduct by making bias an prejudicial remarks and erroneous rulings which aligned him with the Commonwealth's case

_____

Supporting **FACTS** (tell your story briefly without citing cases or law):

After a hearing on a post Conviction motion my Attorney discovered a comment by Cunningham admitting to seeing perjury and ruling solely to align with the Commonwealth's Case and advocating their position.

Was this claim raised in a prior federal petition, application, or motion?

YES ☐    NO ☑

Does this claim rely on a "new rule of constitutional law"?    YES ☐    NO ☑

If "yes," state the new rule of law (give case name and citation):

_____

_____

_____

_____

_____

Does this claim rely on newly discovered evidence?    YES ☑    NO ☐

If "yes," briefly state the new evidence and why it was not previously available:

My video copy of the Court proceeding did not Contain the Comment at the end of the Suppression hearing. The Comment was made after my attorney obtained the video from the Court that was a extended version.

_____

**Additional claims may be asserted on additional pages if necessary.**

9. Do you have any motion or appeal now pending in any federal court as to the judgment now under attack?

YES ☐     NO ☑

If "yes," name of court and nature of proceeding:_____

_____

_____

_____

Case number: _____

Wherefore, movant asks the United States Court of Appeals for the Sixth Circuit to grant an order authorizing the district court to consider the movant's second or successive petition for a writ of habeas corpus under 28 U.S.C. § 2254. I declare under penalty of perjury that my answers to all the questions in this motion for authorization are true and correct.

Executed on February 14, 2019
　　　　　　　　　(Date)


Aubra Ellison
　　　　　Movant's Signature

**Affidavit**

I Michelle Griffith, swear under the penalty of perjury that the following statement is true and correct. The following is what I'm willing to testify to in court. In March 2009 I met Ricco Cunningham through mutual friend. At the time I was addicted to crack cocaine. From March 2009 until the day, he was killed I brought crack from Rico in the Portland area. He sold me drugs cheaper than other dealers, so I always went to Ricco. Over the few months I knew that I knew him we became close. When I didn't have money for drugs, I would have sex with Ricco for drugs. Ricco always carried a big gun when he sold drugs, a sliver revolver. I heard from other people who knew him that he used to rob other drug dealers. On the day he was killed, October 20, 2009, I called Ricco to buy crack he told me he was by the street; I could see Ricco standing at the driver window of a green car. The green car was facing towards the 22nd. I could not see inside the green car because the windows were tinted. Ricco had his gun in his hand, a sliver revolver. I heard him say where's the money and from the tone of his voice it sounded like a robbery. He was robbing someone inside the car. He did not point the gun at the car he kept it at his side. I tried to put my car in reverse and back out the alley. Before I could get my car in reverse a guy standing by the trunk of the car 2 or 3 feet away from Ricco pulled out a black gun and shot him in his head. Ricco fell backwards onto his back, then the person shot him again in his head. After the second shot I got my car in reverse and backed out the alley onto Lytle Street. I could see clear the persons face that shot Ricco and I'm a hundred percent sure that it was not Antonio Ellison. When I saw on the news that he was charged with the killing Ricco I know he was not the person I saw shot him. I called to the Louisville metro homicide office and I asked to speak with the detective on the case, I spoke with detective jon lesher.I told him my name and I was there the day Ricco Cunningham was killed and Antonio Ellison was not the person I saw kill Ricco. Detective jon lesher told me he had evidence Antonio Ellison was the shooter and that he had been charged with murder before he got off. I did nor immediately call the police out of fear of being killed too and other people was in the alley and witnessed the shooting he took my information and told me he'd call me back from him. I felt he did not believe me, so I did not call back to the homicide office. I do not know Antonio Ellison or any of his family or friends. I did not know what else to do but I knew the wrong person was being charged with killing Ricco. On September 26, 2023, I saw a friend of Antonio Ellison make a post on social media for his birthday. I contacted this friend and told him I knew Antonio was innocent. I was there when Ricco was killed, and Antonio did not kill him. The friend asked would I be willing to give a statement to Antonio's attorney. I told him I would, and I was willing to testify in court because I knew Antonio was innocent.

**Michelle Griffith**

KELSIE RENEA PRICE
Notary Public
Commonwealth of Kentucky
Commission Number KYNP26167
My Commission Expires Mar 22, 2025

I Jordan Thompson, Hereby certify that the statements made in this affidavit are true and correct in accordance with my knowledge and belief. I swear under the penalty of perjury, *KRS § 523.020* that these statements are true as well. The following is what I'm willing to testify to and let the court know:

That on 10-18-2009, my friend, Antonio Ellison called me because him and his girlfriend was arguing and he wanted to move his stuff out of her house. I told him to give me a min. and I would be over after I dropped my other friend off at her mom's house. When I got to his girlfriends house, he (Ellison) was outside on the porch with some clothes in his hands. He explained that he had more stuff to get and threw the clothes in his hand, in the back seat of my car.

He then went back in and got a T.V. And DVD Player and we left. I took him to his Grandmothers and he took the T.V. & DVD player inside with him. He signaled from the door that he would talk to me later and I pulled off. At this time neither of us knew he left his clothes in the car. I called him and told him he left his Jacket and stuff in the car. We agreed he would "get it later".

I parked my car that night and didn't drive it again for two days as I was with my girlfriend preparing to take a trip out of town and we stayed at her place and drove her car. While there on 10-20-2009 my baby daddy came over and *we* got into an argument about money and he got jealous and took the keys to my car. When I discovered he had went to my house and *took* the car, me and my friend road around the neighborhood looking for it as I knew he would not go very far.

That's when I seen the car, and it looked pulled over. I went to the scene and told the officer "that's my car" he told me I would have to report it stolen to get it back, not wanting to get my Baby Daddy in trouble, I just left. This concludes my knowledge of events leading to my friends arrest.

NOTARY STATEMENT

Jordan Thompson
**JORDAN THOMPSON**

9-18-20
**DATE.**

N. Collins
Notary Public @ LARGE

9-18-2020
Date

3-28-2023
**Commission Expires On**

MICKESHA D. COLLINS
NOTARY PUBLIC
Kentucky, State At Large
I.D. # 620246
My Commission Expires 3/28/2023

# AFFIDAVIT:

I *Antonio Ellison* Last Four of S.S.# 1105 do hereby certify and confirm that under the penalty of perjury by the state of Kentucky and the federal Government that the forgoing statements are true and correct according to my best recollection and understanding.

AND BELIEF:

That the statements contained herein are true. I can remember my attorney telling me that the prosecution simply refused to provide the picture, or photo used to identify me. He informed me that he didn't think they had it. I told him it was ion there possession because a look at the T.V. Show, " The First 48" clearly showed the identification procedure used.

Since they did not produce the photo, I remember we could not argue the point at my suppression hearing. Before the trial came around, I told My attorney at the time, Ted Shouse to try again to get the photo. He filed another motion asking for the photo and for suppression again. No hearing was held, and the Prosecution was not order to produce the Photograph.

My attorney told me that I had to testify at trial to a self defense, defense. I told him I didn't want to, but he informed me that I could not get the defense unless I did so. I asked why we had to admit to anything, he informed me that was the only way to refute Officer, T. Banks "positive" I.D. Of me as the person who ran from the car.

Despite my testimony, I was not at anytime the person who who fled from the car on the night of the crime. I have never been known as "Lil Mikey", which was the individual who the other car's occupants stated was the person who bolted from the car. I did not shoot anybody. The only reason I testified that I did was because my attorney, again, informed me that was the ONLY way to refute the officers identification.

I do not deny being in the car on a previous occasion, however, this was only days prior to the crime when Ms. *Jordan Thompson*, the cars owner, agreed to take some of

my clother to my uncles house because me and my girl friend had recently broke up. This resulted in me and her making several trips, which is why my clothes were in the *back seat the car,* and my prints *on* the car.

I ask this Court to Honor these statements as true and correct.

_____      **8-21-2020**
Notary Public                              Date

**10-17-2022**
**Commission Expires**

_____      8.21.20

**Antonio Ellison**                        **Date.**




# LOUISVILLE METRO POLICE DEPARTMENT
### Criminal Investigation Section

## INVESTIGATIVE REPORT

| Type of Investigation: | File No. | Date of Report |
|---|---|---|
| | 09-240 | July 7, 2010 |
| Homicide Investigation | Submitted By | |
| | Detective Jon Lesher | |
| Activity: Photo shown to Detective Tramont Banks | Lead Detective: | |
| | Detective Kristen Downs | |

VICTIM: Ricco J. Cunningham
ADDRESS: 839 South 37th Street
LOCATION: 2033 Lytle Street (North Alley)
DATE: October 20, 2009
TIME: 1917 Hours

## PHOTO SHOWN TO DETECTIVE TRAMONT BANKS

On October 21, 2009 Detective Tramont Banks came to the Homicide office to try and identify the person who ran from the vehicle he and Detective Mike Woodard pulled over on October 20, 2009. The subject who ran was observed in the vehicle pulling out of the alley near 22nd and Portland Avenue after hearing shots fired. Upon arrival at the office Detective Banks was shown a front and side view single picture of the suspect Antonio Ellison. Detective Banks immediately recognized Antonio Ellison as the subject who ran from him the day prior. I then contacted Detective Kristen Downs and told her about the identification of the suspect.

| Investigator's Signature: | |
|---|---|
| Supervisor's Signature: | Sgt Clayton CID 2564 7/7/10 |

This report is the property of the Louisville Metro Police Department. Neither it nor its contents may be disseminated to unauthorized personnel or agencies.

LMPD # 05-0002 10/05

000707

KENTUCKY COURT OF JUSTICE
JEFFERSON CIRCUIT COURT
DIVISION 4
09CR003445 & 09CR003170

COMMONWEALTH OF KENTUCKY                                    PLAINTIFF

VS.

**ANTONIO GILES ELLISON**
CLIFTON C. JONES
DONTAY L. RICE                                              DEFENDANTS

NOTICE – MOTION - ORDER

\* \* \* \* \* \* \*

**NOTICE**

TO: HON. MARK BAKER
Assistant Commonwealth Attorney

Please take notice that the following Motion will be presented to the Court on

Tuesday, December 21, 2010 at 10:30 a.m. or as soon thereafter as the Court will allow.

**MOTION TO SUPPRESS IDENTIFICATION AND MOTION TO PRODUCE
EVIDENCE**

Comes now the defendant, Antonio Giles Ellison, by counsel, Theodore S.

Shouse, pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the

United States Constitution; Sections Two, Seven, Eleven and Fourteen of the

Constitution of Kentucky; the Rules of Criminal Procedure; and, any and all applicable

case law and files this Motion to suppress an out of court identification and motion to

produce eveidence.. In support of this motion, the defense states as follows:

1. On October 21, 2009 Louisville Metro Police Department (LMPD) Detective

43

Tramont Banks was shown a single photograph of Mr. Ellison and from this photograph identified Mr. Ellison as the suspect who ran from him on the night of Ocotober 20, 2009.

2. This identification should be suppressed because it was unconstitutionally suggestive. See, Manson v. Brathwaite, 432 U.S. 98 (1977) and Fields v. Commonwealth, 219 S.W.3d 742 (Ky. 2007).

3. The single photograph used in this unconstitutional identification procedure has not been provided to the defense.

WHEREFORE, the defendant moves this Honorable Court to enter the attached Order setting a date for a suppression hearing and requiring the Commonwealth to provide the photograph in advance of this hearing.

Respectfully submitted,

Theodore S. Shouse
Attorney at Law
600 West Main Street – Suite 100
Louisville, KY 40202
(502) 540-1180
(502) 568-3600 (fax)

## CERTIFICATE OF SERVICE

The original of the foregoing Motion was presented in open court on this 21st day of December, 2010. A true and correct copy of this Motion was hand delivered to Hon. Mark Baker, or his agent, this 21st day of December, 2010. True and correct copies of this Motion were hand delivered to counsel of record for the co-defendants in this case on this 21st day of December 2010.

Theodore S. Shouse

UNITED STATES COURT OFAPPEALS
SIXTH CIRCUIT APPEALS COURT
CASE#

ANTONIO ELLISON                              PETITIONER

    V.S

CRAIG HUGES (Warden)                         RESPONDENT

MEMORANDUM OF LAW IN SUPPORT OF ELLTSONS REQUEST FOR
AUTHORIZAI'ION TO FILE A SECOND 28 U.S.C.2254

Comes now the Petitioner, Antonio Ellison, Pro-se and respectfully moves this honorable Court

to grant him permission to file a second **28 U.S.C.2254** petition based on Newly Discovered

Facts which support his allegations of Judicial, Prosecution and Police Misconduct. The

allegations herein verify that no reasonable fact finder would have found Ellison guilty- of the

offense for which he stands convicted. As grounds for the relief requested, Petitioner avers as

follows:

**A.** Ellison was denied his Constitutional right to an impartial judge due to Judicial Misconduct u,

which infected the remainder of the proceedings with bias reflected in the Court's rulings and ex

parte comments as they reflect Judge Charles Cunningham's Partiality towards the

commonwealth's case.

**B.** Ellison avers that his constitutional right to a fair trial was violated based on his discovery of a

document (investigative Report) belonging to Detective Lesher, which was not located in the

1

discovery and denied him his right to present a complete defense at both his Suppression hearing and impeach Lesher at trial contrary to **Brady v. Maryland.**

C. Ellison was also denied a fair trial based on Police Misconduct as he recently discovered exculpatory evidence that was suppressed by Detective Lesher in the form of a witness statement affirmatively stating that Ellison was not the shooter. This affidavit has been attached. Ellison request relief and permission to file a second 28 U.S.C. 2254 based on these claims which are in the interest of justice.

### LAW IN RELATION TO THE FACTS AND STANDARD OF REVIEW

This Court has held they may not authorize the filing of a subsequent habeas petition unless the movant presents a claim not previously presented in a §2254 petition and makes a prima facie showing of (1) newly discovered evidence that "could not have been discovered previously through the exercise of due diligence" and that, "if proven and viewed in light of the evidence as a whole," sufficiently establishes that, but for constitutional error, "no reasonable factfinder would have found the applicant guilty of the underlying offense" or (2) a previously unavailable rule of constitutional law that the Supreme Court made retroactive to cases on collateral review. 28 U.S.C. §2244(b)(2), (b)(3)(C). "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Siggers*, 615 F.3d 477, 479 (6th Cir.2010) (quoting *In re Lott*, 366 F.3d 431,433 (6th Cir. 2004)). Ellison's claims herein do not rely on a new rule of Constitutional law but do rely of facts and evidence that were purposely withheld from him, combined with the Judicial, prosecution and Police Misconduct, all affecting the evidence presented, which altered the defence at trial. As a matter of law, Ellison avers that his attorney discovered evidence of

2

Judicial bias combined with the Court's rulings, which support his allegation herein that the Judge was not only. Partial, but committed, Judicial Misconduct as well. See <u>U.S. v. Blood</u>, 435 F. 3d 612 (6th. Cir. 2006). Ellison will demonstrate below how this claim makes the required "'Prima facie' showing and will provide some documentation (in the record) to support the claim below. Next, Ellison avers that the evidence which was discovered and withheld by the prosecution includes an "investigative letter." This letter by Detective Lesher demonstrates his identification procedure conducted with Officer T. Banks was prejudicial, supported perjury and, most importantly, prevented Ellison's right to present a complete defense at trial. This was due to the altered defense and inability to impeach Lesher at trial and the suppression hearing. This constituted a Brady violation, which can be the subject of relief and support this court's authorization to file a second 28. U.S.C. 2254. <u>See In re Jackson</u>, l2 F.4th 604 (6th. Cir. 2021). Ellison will also argue In re Jackson, l2 F.4th 604 Supra again, in reference to the police withholding exculpatory evidence, which Ellison has recently discovered when a witness (Michelle Griffith) advised members of his family that she witnessed the shooting and gave an exonerating statement to Detective Lesher. This statement was withheld by Lesher, and it is unclear if the Commonwealth was complicit in the withholding. The state can still be liable for police misconduct and withholding exculpatory evidence. See <u>Youngblood v. West Virginia</u>, 547 U.S. 867 (2006) and <u>Kyles v. Whitley</u>, 514 U.S. 419 (1994), stating that the prosecution was still responsible for all information collected on behalf of the police. The documentation included in this claim could not have been discovered by Ellison or his counsel due to the fact she was only known to Detective Lesher, who refused to disclose this information or conduct a follow-up due to his prejudice during the investigative portion of the case. No reasonable fact finder would

have found Ellison guilty of the underlining offenses but for the errors contained in this application.

## ARGUMENT ONE: 11-21-23

**ELLISON WAS DENIED HIS RIGHT TO A PARTIAL DECISION MAKER DUE TO SEVERAL INSTANTCES OF JUDICIAL MISCONDUCT, WHICH ADVERSELY AFFECTED THE COURTS COMMENTS AS WELL AS HIS RULINGS WHICH WORKED TO DENY ELLISON HIS RIGHT TO DUE PROCESS IN VIOLATION OF HIS PROTECTED 6TH & 14TH U.S. CONSTITUTIONAL RIGHTS**

Ellison avers that he was denied an impartial decision maker based on Judge Charles Cunningham making newly discovered comments, affecting the rulings in his case. This information was discovered after Ellison had exhausted all post-conviction remedies through state and federal court, and his CR. 60.02, alleging Perjury misconduct, Brady, and fraud, was in the process of appeals. Ellison's counsel discovered an ex-parte exchange between Mark Baker (prosecutor) and the Judge as he obtained a different version of the DVD from the Jefferson Circuit Court Clerk. At the conclusion of the suppression hearing on 7-13-2010, the Judge told Baker, "...well, the next time someone accuses you of coaching your witnesses, you tell them to come to see me..." Baker responded. "I'll save that for trial." (V/R 7-10-13 12:30:10 -12:33:50).

This ex-parte exchange was unknown to Ellison throughout his trial and post-conviction proceedings. Ellison's copy of the hearing was void of this exchange, so he couldn't have discovered what was completely unknown. Ellison should not be faulted for failing to discover misconduct between two court officers. Respectfully. Hence, the factual predicate for this

4

Judicial misconduct claim could not have been discovered previously through the exercise of due diligence based on the fact Ellison was under the impression that he had the complete record from the Jefferson Circuit Court. LE. (DVD) At the hearing on 7-10-13, the Commonwealth knowingly introduced what they knew to be perjured testimony via detective Jon Lesher, and Officer Tremont Banks, the officer who claimed to see Ellison, he testified that he was only shown one single photo of Ellison. The Commonwealth then instructed Lesher to testify that there were multiple photos shown. (To be discussed below) It is evident from the established record that the court recognized the perjury, and that was the root of the biased comment and the ex-Parte conversation about the case.

The decision to deny the motion to suppress the identification was not based on applicable law in relation to the facts alleged at the hearing but to protect the Commonwealth from the misconduct witnessed and commented on by the court. This continued throughout the proceedings via Cunningham's lack of action. Further, before the comment was made, the court told the defence counsel to send him some cases to support his position and then stated that if he (Judge) found those convincing, he would do some **"looking and find some cases that supported the position of the commonwealth"**.(V/R. 7-10-13 12:20-12:30) This comment took on a whole new meaning after the discovery of the bias and partial remark, which was the start of the judicial misconduct that took place. Judicial misconduct is found when the Judge's remarks clearly indicate a hostility to one of the parties, an unwanted pre-judgment on the merits of the case, or an alignment on the part of the court with one of the parties." See **Rocha v. Great AM Ins. Co. 850 F.2d 1095, 1100 (6tb. 1988)** or as here where the Judge, in exercising his discretion, abandons his proper role and assumes the role of an advocate. I.D Ellison avers that offering to protect the prosecution from the future practice of misconduct during the trial is

5

clearly hostile and offering to conduct legal research on behalf of the Commonwealth rendered Cunningham an advocate for the Commonwealth's position. In the future proceedings, the Judge made several rulings that supported judicial misconduct, coupled with his comment in favor of the Commonwealth in stark contradiction of Ellison's rights to a partial decision maker and fair trial. The misconduct in the rulings was entered to "prevent the likelihood of a possible acquittal."

For instance, after the erroneous ruling at the suppression hearing, Ellison's attorney, Ted Shouse, was trying to obtain the photo that was allegedly used to identify Ellison from the Commonwealth. This was because the Judge didn't have it, nor did he see it, and the photo was evidence needed to make a proper ruling based on the limited defense Ellison put on, which was that the photo did not match the description given by Banks, nor did he as Ellison was not a "Dark Skinned" Man nor did he have "braids" At the hearing on Shouse motion to compel the evidence and photo, the court told the Commonwealth to turn over the picture before trial as the defense was "entitled to see that" but denied the motion for a subsequent suppression hearing. Ellison avers that the Judge knew that it would not be produced so denying the hearing was an affirmative way of legally preventing the Commonwealth from any real obligation to relinquish the photo to the defense as they also knew Ellison did not remotely match the description by officer banks. And his photo should have never been included in the identification procedure. Had the court ensured that Ellison's defense team received the photo, the likelihood that suppression would have been warranted would have been high, hence a case dismissal. However, during the trial, counsel was about to impeach Banks with the footage from the "First 48" T.V. Show, which had a version of the photo shown, and the court prevented this via an arbitrary ruling. (To be discussed below) During avowal, the court commented that he was pretty sure the

6

photos were the same "if we go back and look," ignoring the fact that he refused to mandate their production prior to trial, which seriously altered Ellison's defense. Not having the photos to impeach the officer's testimony left Ellison's defense team left Ellison no choice but to argue self-defense as he had no other way to demonstrate that banks had misidentified him. The protection offered was accepted at trial. Just as the commonwealth requested to "save that for trial." Baker did just that. In relation to introducing photos at trial during Tremont Banks testimony, the commonwealth knew the defense had not been provided any photos to contradict their prejudicial pictures (Exhibit 39 &40 which were never seen by the defense) as they were never compelled to do so. (V/R 2-12-13 3:33:59) Ellison's defense team sought to introduce identification photos via video from the First 48 T.V. show. The judge refused to allow it. This led to a hearing outside the presence of the jury. To elaborate on the misconduct by Cunningham during that time, after watching the first 48 videos to look at the photos presented, Ellison intends the alignment on the court's side of Mark Baker. Cunningham: "I'll just comment. It looked like to me the photos are the same as 39 & 40 (bakers' undisclosed photo exhibits) for what that's worth." Baker: "l think that's what he was saying on Cross." Cunningham: "I'm just saying at a quick glance, and I suspect if found the photos that were introduced as what he was shown here were going to find the same thing."(V/R 2-12- l3 4:03: 11-4:05:06). Baker's alignment is respectfully apparent. The commonwealth never asserted they "lost" the photos, or the court shouldn't have stated Ellison's defense had a right to the photos before trial, so there was nothing to be "found", only the failure to obligate their production, which was now extremely prejudicial to Ellison. Further, Ellison clearly had braids in the first 48 videos, and the undisclosed photos introduced by the Commonwealth depicted him with a "low even haircut." Again, self-defense was only pursued as a last option to refute the most compelling aspect of the

7

commonwealth's case. Bank identification testimony, which only made it to trial based on Cunningham's alignment with the prosecution and the refusal to compel the production of the photos, in this instance.

Next, Ellison avers that the reason why the court allowed the commonwealth to conduct a discovery dump has now become clear. The commonwealth moved to introduce hundreds of jail phone calls without informing the defense in advance, and when they did, they weren't compelled by the courts to disclose exactly which they intended to use to "impeach" Ellison if he denied drug trafficking. This resulted in Ellison having to admit to previous drug trafficking, as the commonwealth had a call that was made, which had established that he trafficked pills in the past. However, the court allowed this call for impeachment purposes despite the fact it was made prior to the crime. Because the defense was altered based on the court's refusal to compel production of photos, Ellison's defense team chose a defense in which a drug dispute led to Ellison's defending himself. Important to this defense was a lab report withheld by the Commonwealth. The court took no action. Not even a mere admonishment towards the commonwealth after learning the true weight of the narcotics, which were never disclosed. This, even though Ellison's counsel, Rob Eggart, stated his opening would have been different had he had the proper weight disclosed to him. (V/R 2-15-13 @ 12:54:00) This clearly indicates that the court's alignment with the commonwealth was established prior to the court making the biased and partial remark, which supports judicial misconduct. Lastly, the commonwealth was allowed by the court to ask improper questions without admonishment. (V/R 2-13-13 10:08:00) the Commonwealth asked Crystal Holler," Do you want to be here today?" (Zoller) "No" (Com/w)"Why?" (Zoller) "Fear for my life." The court allowed this despite opposition from the defense that there was a lack of basis in the record to ask the prejudicial question—the Judge in

8

this case. Based on the examples provided herein, allowed the commonwealth to do what they pleased at the complete detriment to Ellison's defence, with the intent to deny him the acquittal that was probable, based in large part on the court's preconceived alignment, as well as protection.

This court is aware of the law involved. And the instances of Judicial Misconduct outlined herein are consistent with the legal situation found in **United States v. Ross, 703 F.3d 855 (6th.cir. 2012). Which stated the law in this circuit:** "Judicial misconduct is found where the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parries." United States v. Blood.435 F.3d 612.629 f6th Cir.2006) (citations and internal quotation marks omitted). Based on the unknown exchange between Cunningham and Baker, which demonstrated the alignment in their own words, nothing needed to be construed, coupled with the instances here in, which are now clear, he requests this court to allow him to proceed with his second 2254 petition as the prima facie showing has been made as required pursuant to the well-known provisions of 2244, as the claim warrants further exploration via a second 28 U.S.C. 2254 in the district court. Lastly, absent the court's structural denial of his due process protection, there would have been no trial in this case, so no reasonable fact finder would have found him guilty of the offense. This also lends credence to the allegations Ellison's United States 6th & 14th Amendments have been violated due to the court's engagement in judicial misconduct grounds for which he relies for relief and held by this court's precedent.

**ARGUMENT TWO**

**ELLISON'S RIGHT TO DUE PROCESS WAS VIOLATED DUE TO MISCONDUCT ON THE PART OF THE PROSECUTION IN WITHOLDING THE PHOTO AI\D A CRITICAL INVESTIGATIVE REPORT NEEDED TO IMPEACHED DETECTIVES AT TRIAL AND THE SUPPRESSION HEARING IN VIOLATION OF BRADY AND THE 6rtr & 14 UMTED STATES CONSTITUTIONAL AMENDMENTS.**

Ellison's avers that newly discovered facts consistent with BRADY warrant relief pursuant to 28. U.S.C. 2244 (b)(2)(b) based on the misconduct on the part of the prosecution. The violation resulted in the defense being altered because of Ellison's inability to impeach Detective Lesher. Ellison avers that the prosecution withheld a critical investigative report completed by Detective Lesher during the pretrial and trial stages, which ultimately denied him an affirmative defense, not only at the suppression hearing but the trial as well. The investigative report established that Detective Jon Lesher showed Officer Tremont Banks a single photo during the identification procedure. This withheld evidence constituted Brady material due to the fact it was certainly applicable to impeachment at the suppression and trial as stated. Ellison nor his counsel had this information during his pretrial stages, and he obtained the report from post-conviction counsel after the conclusion of his federal litigation. After the discovery of the investigative report, Ellison moved immediately to have his sentence and conviction vacated. This is based on the fact, evident by the newly discovered comment and document, that the court made the suppression ruling to align directly on the side of the commonwealth despite the evident misconduct.

Ellison avers that the prosecutions' purpose for withholding of the investigative report is now clear; it directly prevented his defense counsel from impeaching Detective Lesher on his statements at his suppression hearing held on 7-10-13. Absent his trial, the suppression hearing was the most critical phase of the litigation. Ellison's attorney was prevented from impeaching Lesher with his own report, which was completed only six days prior to the actual hearing. This

10

demonstrates that he, in fact, committed perjury, as the document affirms that he did not believe his statement to be true. **See 18. U.S.C. Sec 1621 and KRS.523.020** perjury in the first degree. There is also evidence that the prosecution predicted this problem and knowingly introduced the perjured testimony through Lesher. This was only possible because the prosecution withheld the only document which could assault Lesher's credibility, increasing the likelihood that his credibility would suffer to the benefit of Ellison. The identification would have been suppressed had the defense team has been provided with the investigative report, coupled with the production of the alleged photo used to identify him. Hence the prosecution's misconduct resulted in severe damage to the case and the real possibility that no trial could have been conducted absent the identification, this misconduct was engaged to prevent the likelihood of a possible acquinal. Done intentionally not inadvertently. This is evidenced by the multiple requests for the photo used to identify Ellison, which was ignored by the court and commonwealth. In fact, Lesher admitted that Detective Kristin Downs had the photos, and she turned them in. The prosecution simply elected not to turn over the documents and photo, knowing the result they could achieve.

Pursuant to BRADY, the government must "give to defendant evidence in his possession that is both favorable to the defendant or is material to his guilt and punishment." **Schledwitz v. U.S. 169 F.3d. 1003, l011 (6th. Cir. 1999).** "It is well settled that this discloser obligation included evidence that could be used to impeach the credibility of the witness" i.d. **(Citing Giglio v. U.S. 405 U.S. 150, 154-55 (1972))** this circuit has held that police reports are considered eligible for BRADY consideration. "Materiality requires a reasonable probability that had the evidence been disclosed to the defense, the result of the "proceeding" would have been different" I.D.@ l0l2 Quoting **U.S. V. Bagley 473 U.S. 667,682 (1985)** The proceeding, in this

11

case, encompasses both the suppression hearing as well the trial that would have been different. This circuit has already considered police reports, which are material withheld and could be impeached, to be BRADY material. See **Montgomery v. Bagley,5Sl F3d.440 (6th. 2009)**. It is critical to note that absent from the misconduct by the prosecution and the investigative report and photos being properly disclosed to Ellison, his defense would have been different. Absent the only two documents that could have impeached the most vital aspect of the case (bank identification), self-defense was chosen as there was no other way to attack the credibility of an officer's alleged identification. As the documents related to Brady, that is precisely how the material could have affected the proceedings. Recently, **In Re Jackson '12 F.4tb 604 (6th 2021)**, this court held the defendant to be granted permission to file a second 2254 petition based on his assertion of his constitutional rights violation involving BRADY material. Ellison respectfully requests the relief granted in Jackson. The majority agreed that a Primi Facie shorving requires sufficient allegation of fact together with some documentation that would warrant a fuller exploration in the district court. **In In Re Lott 366 f.3d 431,433-6'b 2004 (quoting Bennett v. U.S. l19 F.3d. 468469 (7th. 1997)**. Ellison has demonstrated that he could not have discovered withheld police reports, and the photos still have yet to be disclosed. He has attached the investigative report. Which is still not part of the official record, in accordance with the showing mentioned above. Ellison requested that this court find that this court committed misconduct. Violated Brady, hence his constitutional rights, and he was granted permission to file a second 2254 petition and allow for a fuller exploration in the Western District court.

## AUGREMENT THREE:

## ELLISON WAS DENIED A FAIR TRIAL AS A DIRECT RESULT OF POLICE MISCONDUCT (STATE OF KENTUCKY) WHEN DETECTIVE JON LESHER

**PURPOSELY SUPPRESSED EXCULPATORY EVIDENCE, WHICH CONSISTED OF AN EYEWITNESS STATEMENT MADE TO HIM PERSONALLY IN VIOLATION OF THE UNITED STATES CONSTITUTIONS 6TH & 14TH AMENDMENT DUE PROCESS AND FAIR TRAIL RIGHTS.**

Ellison avers that he was unlawfully deprived of his constitutional right to a fair trial and the opportunity to present a complete defense because of the police misconduct engaged in by Detective Jon Lesher. Ellison contends that an eyewitness (Ms. Michelle Griffith) has recently came forward admitting that she actually saw who shot Ricco Cunningham on the night of the crime and relayed this information to Detective Jon Lesher. She contacted Ellison's family after seeing a birthday post on 9-26-2023 on social media. She informed Ellison's family that she knew he was innocent and that she witnessed the crime and was willing to help in any way she could. When his family asked why she didn't come forward (as stated in the affidavit), she said she initially contacted the Police and spoke to Detective Jon Lesher, the detective on the case. When she contacted Lesher, she informed him that she had seen Antonio Ellison on the news, charged with the Murder of Ricco Cunningham, and she had witnessed the murder and was 100% sure it wasn't Ellison. She was not asked for a description or any follow-up questions. Instead, Lesher told her he had evidence that Ellison was the shooter; he had been charged with murder in the past and had got off. She emphatically insisted that it was not Ellison. At this point, Lesher took down her information and. She assumed the facts she told him as well. As he was repeating them while jotting them down on the phone, he said he would call her back. The call never came, and this exculpatory evidence was suppressed from the start of the case. This occurred prior to the indictment being returned, indicating the prejudicial nature of Jon Lesher's investigation. Because Jon Lesher suppressed this evidence as recently discovered, there was no diligence that Ellison could have engaged in to have uncovered the prejudicial plot. The result had a domino effect on the case. This explains why Ellison's photo ended up in a line-up with

13

Officer Banks when Ellison didn't match the description given by Banks to be placed in the line-up from the start. There was no other evidence that Ellison allegedly was the man who ran from the green car. Jon Lesher's mind was made up, and all evidence that that was contrary to his prefabricated theory was ignored, which resulted in police misconduct. Ellison most certainly would not have testified had this witness been disclosed. And his defense would have been fundamentally different, i.e. not self-defense implicating him, as there was no way to refute the perceived credibility of an officer's identification, which was also the result of police misconduct. The seriousness of this misconduct cannot be understated, nor can the stated effect on the defense presented at trial. Ellison avers that Jon Lesher violated BRADY. However, he does not contend that the commonwealth was ever made aware of Ms. Griffith's exculpatory statement. However, Jon Lesher being an agent of the state, the result is the same as the commonwealth bars the responsibility of its actors. The practices of the Police are often unknown by the prosecution. However, Brady's duties extend to the Police via **Kyles v. Whitley** Supra. This also extends to information in the possession of the investigating officer. Likewise, in **Strickler v. Green 119. S. Ct.1935 (1999),** the court held that Brady applied to evidence known only to the Police, even if the prosecution was unaware. This circuit has found that "the fact that Brady may require disclosure of evidence known only to police and not the prosecutor means only that it imposes upon prosecutors a duty to learn of any favorable evidence known to others acting on behalf of the government's behalf including police" see D'Ambrosio v. Marino.747 F.3d 378 (6th Cir.2014). Ellison avers that the moment Ms. Griffith gave the information and Lesher took down her information, it was considered discovery, and that discovery was what the prosecution was under a duty to discover. Still, Ellison avers that these notes were not disclosed, which would, at a minimum, would allow his defense team to

14

investigate and subsequently call the eyewitness at trial. Brady places an affirmative duty to disclose, especially when the evidence is apparently exculpatory. See **Arizona v. Youngblood 4EE U.S.51, 58 (1988)** especially when the 'exculpatory value of the evidence would've been apparent to detective given the state of the case at the time" **see Elkins v. Summit cnty.615 F.3d 671-677 (6th.2010).** There is no question that Ms. Griffith contacted Lesher before the indictment was ever returned, based on the fact she contacted Lesher after seeing Ellison on the news shortly after his arrest. The court dealt with this exact situation in **Clark v. Nagy, 934 F.3d 483(6th. Cir.2019).** Clark discovered evidence in the form of an eyewitness affidavit that was suppressed by the Police. The court found that the suppressed affidavit constituted a BRADY violation. This determination was made even though the affiant informed her father, who was a police detective, of what she had seen... As stated in **CLARK,** "After the body was recovered the next day, Jackson told her father, "An Inkster detective," what she had seen. (Martin's murder was investigated by the Inkster Police Department.) Her father told her to keep [her] mouth closed . . . because he would take care of the situation and he did not want [her] placing [her] life in danger." It should be noted that Ms. Griffith contacted the police verses Ms. Jackson relaying the information to her father in a non-official form. Nonetheless, the court considered the discloser to her father's discovery, and the suppression violated BRADY and warranted relief. This is because "[A] positive identification of different suspects by an eyewitness to the crime" is undoubtedly the sort of favorable evidence contemplated by *Brady. Jamison v. Collins.*291 F.3d 380.389 (6th Cir.2002). I.D. 492

Taking the requirements of BRADY into consideration, Ellison avers that the facts in CLARK resemble the situation at hand. Ellison again avers that had this witness statement has been disclosed, he would have never elected to pursue a self-defense theory at trial. Absent that

theory, selected due to judicial and prosecutorial misconduct as alleged above, the only evidence at trial would have been the testimony of Officer Banks. Nothing else (besides that which could be explained) linked Ellison to the offense.

The affidavit exonerates Ellison. AEDPA asks whether Griffith's Affidavit, 'if proven and viewed in light of the evidence as a whole," 28 U.S.C. § 2244(b) (2)(B)(ii), would have changed the outcome of the trial. Applying this standard in **Keith v. Bobby**, the court explained that even if new evidence bearing on the credibility of secondary witnesses were proven, it could not meet this standard in light of "the balance of evidence left uncontroverted by" the new allegations-there, "the eyewitness placing [the petitioner] at the scene; the panel match of the license plate; and the matching gun casings." 551 F.3d 555, 559 (6th Cir. 2009).

In the case at hand, the defense against Ellison was circumstantial at best, including the alleged identification. There was no other physical evidence that linked Ellison to the murder. The fingerprints on the car were left before that night Ricco Cunningham was killed, as Ellison knew the owner and had left clothes in the car. Hence, Ms. Griffith's Affidavit is considered exculpatory evidence pursuant to **Clark v. Naqv**, **934 F.3d 483 (6th. Cir. 2019) because this claim involves Police misconduct. Ellison avens that this court has also provided relief in granting permission to file a second 2254 petition.** In the case of in re Jackson, 12 F.4th 604 (6ft. Cir. 2021) His motion to remand was denied because of the decision in In re Wogenstahl, 902 F.3d 621 (6th Cir. 2018) did not contradict prior precedent. Still, he was granted permission to file the proposed petition as to his Brady and Napue claims since he made a made a prima facie showing that the witness statements implicating an alternative suspect could not have been discovered earlier through the exercise of due diligence. He also met his obligation to make a

16

prima facie showing under **28 U.S.C.S, § 2244(b)(2)(B)(ii)** that the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish. by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. Ellison requested the same relief as granted in CLARK & JACKSON based on the claims asserted and the fact they could not have been discovered previously. Ellison incorporates the law of both herein as if cited at length for the brevity of the court.

**CONCLUSION**: Ellison contends that the instances listed above have demonstrated that his trial was fundamentally unfair, denying him due process. The applicable requirements contained in under **28 U.S.C.S § 2244(b) (2)(B)(ii)** have been met, and this court is authorized to grant Ellison the relief he has requested. This circuit has stood on the side of justice when dealing with BRADY and Misconduct issues on judges, prosecution and Police as argued in the case law.

ANTONIO ELLISON

17

NOTICE

I hereby give notice that a true and correct copy of this motion was mailed postage prepaid to the United States Circuit Court, Deborah S. Hunt, Clerk located a Potter Stewart U.S. Court house 100 E. 56 St. Rm. 540 Cincinnati OH.45202on this day of February 14 day 2024

Antonio Ellison

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00223-GNS-RSE

ANTONIO GILES ELLISON                                    PETITIONER

v.

WARDEN KATHY LITTERAL                                    RESPONDENT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner's Objection (DN 19) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 18). For the following reasons, the Magistrate Judge's Report and Recommendation ("R&R") is **ADOPTED**, Petitioner's Objection is **OVERRULED**, and Petitioner's Petition for Writ of Habeas Corpus (DN 1) is **DISMISSED WITH PREJUDICE**.

## I.     STATEMENT OF FACTS

On October 20, 2009, several Louisville Metro Police officers heard gunshots from a nearby alley and witnessed a vehicle leaving the scene. (R&R 2, DN 18). After the vehicle was stopped, Petitioner Antonio Giles Ellison ("Ellison") fled the vehicle, was pursued by law enforcement, and was eventually apprehended. (R&R 2). The remaining officers arrested the driver of the vehicle, Clinton Jones ("Jones"), and the backseat passenger, Dontay Rice ("Rice"). (R&R 2). A revolver, a small amount of cocaine, and multiple cell phones were recovered from the vehicle. (R&R 2). Meanwhile, the police discovered in the alley the body of Ricco Cunningham, who died from two gunshot wounds. (R&R 2).

On November 19, 2009, Ellison was indicted by a Jefferson County grand jury for complicity to murder, complicity to first-degree trafficking in a controlled substance while in possession of a firearm, and first-degree fleeing or evading the police. (R&R 1). Initially, Ellison,

1

Jones, and Rice were all tried together. (R&R 2). Just after opening arguments, however, the trial judge granted a mistrial in accordance with the "unanimous motion" of the defendants and the agreement of "each attorney, after consulting their client" to waive any double jeopardy arguments. (Order Granting Mistrial, DN 10-2, ID# 98). By contrast, Ellison contends that his attorney never advised him about the waiver of his double jeopardy claim. (Pet'r's Mem. Supp. Pet. 4, DN 9).

In the second trial of Ellison, Jones, and Rice, Ellison was found guilty of complicity to murder, facilitation to first-degree trafficking in a controlled substance while in possession of a firearm, and first-degree fleeing or evading the police. (R&R 2-3). The jury recommended a sentence of life imprisonment for the complicity to murder conviction, twelve months for the facilitation to trafficking conviction, and three years for the fleeing or evading conviction. (R&R 3). All sentences were ordered to run concurrently for a total sentence of life imprisonment. (R&R 3).

Ellison appealed his conviction to the Kentucky Supreme Court, alleging five claims, but his conviction was affirmed. (R&R 3). Ellison subsequently collaterally attacked his conviction alleging ineffective assistance of counsel pursuant to Kentucky Criminal Rule 11.42. (R&R 3). The Jefferson Circuit Court denied Ellison's motion for post-conviction relief, which was affirmed by the Kentucky Court of Appeals. (R&R 3).

## II.   FEDERAL PROCEDURAL HISTORY

Ellison brings this Petition for Writ of Habeas Corpus alleging that the trial court: (1) violated his double jeopardy rights; (2) violated his right to counsel by limiting conversation with his attorney during a break; (3) erred in denying Ellison a separate trial; and (4) violated the Confrontation Clause with the admittance of statements of his non-testifying co-defendants. (Pet. Writ Habeas Corpus 3, DN 1). In the Findings of Fact, Conclusions of Law, and Recommendation,

2

the Magistrate Judge recommended that Ellison's Petition, his request for an evidentiary hearing, and a certificate of appealability all be denied.  (R&R 20).

## III.    JURISDICTION

This Court has jurisdiction to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" pursuant to 28 U.S.C. § 2254(a).

## IV.    STANDARD OF REVIEW

This Court reviews the state court proceedings for decisions that are contrary to or involved an unreasonable application of clearly established federal law or that involved an unreasonable determination of facts.  28 U.S.C. § 2254(d).  General objections or the mere repetition of arguments already presented to the Magistrate Judge are construed as a failure to object.  *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks.  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.").

## V.    DISCUSSION

### A.    Proposed Findings of Fact

Ellison objects to Judge Edward's proposed findings of fact and argues instead that his own facts as offered in his memorandum in support of his habeas petition (DN 9) should be adopted. (Pet'r's Obj. R&R 2).  Ellison has, however, provided nothing to indicate any *specific* fact or facts offered in the R&R to be inaccurate.  *See Chatman v. Litteral*, No. 5:16-CV-00177-GNS-LLK, 2017 WL 4330370, at *4 (W.D. Ky. Sept. 29, 2017) ("General objections have the same effect as would a failure to object—i.e., the Court may forego review of general objections, and general objections are insufficient to preserve the right to appeal." (citing *Mensah v. Mich. Dep't of Corr.*,

3

513 F. App'x 537, 538 (6th Cir. 2013))).  Therefore, Ellison's objection to the R&R's proposed findings of fact is too general to warrant further consideration by this Court.

**B.     Double Jeopardy**

Ellison objects to the Magistrate Judge's findings regarding his double jeopardy claim. (Pet'r's Obj. R&R 6).  Specifically, he argues that an evidentiary hearing should have been granted to determine if his attorney consulted with him prior to waiving his double jeopardy rights. (Pet'r's Obj. R&R 6).  Ellison further argues that the decision to consent to a mistrial and waive double jeopardy rights was not exclusively for his attorney to make. (Pet'r's Obj. R&R 6).

A hearing in this instance is not required to determine whether Ellison's attorney consulted with him prior to agreeing to a mistrial because a finding that Ellison was not consulted as his attorney reported would not change the outcome of this case.  In *Watkins v. Kassulke*, 90 F.3d 138 (6th Cir. 1996), the Sixth Circuit held that where "defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant and removes any bar to reprosecution, *regardless of whether the defendant participates* in the decision." *Id.* at 143 (emphasis added).  In his objection, Ellison correctly points out that in *Watkins*, the Court noted that the decision to waive a right is often a "time-sensitive assessment . . . that must ordinarily be made rapidly and in the heat of trial without any meaningful opportunity for consultation between counsel and defendant . . . ." *Id.*  Even so, as in the present case, there is nothing in *Watson* to suggest the issue there was so time sensitive that counsel for the defendant was unable to consult with her client prior to consenting to a mistrial. *Id.* at 139-40.  Finally, even under Ellison's account, he was in the courtroom and privy to the discussion between his counsel and the judge before his attorney agreed to a mistrial.  This case is not one of counsel waiving a defendant's constitutional rights while the defendant remains completely in the dark.

4

Regardless of whether this Court accepts Ellison's contention that he was not consulted by his counsel on this issue, the decision of whether to agree to a mistrial and waive double jeopardy claims was a matter of trial strategy appropriately left to Ellison's attorney. As such, the Magistrate Judge was correct to conclude that the Kentucky Supreme Court did not unreasonably apply federal law on the double jeopardy issue.

### C. Right to Counsel

Ellison objects to the Magistrate Judge's finding that his right to counsel was not violated when the trial judge partially limited his right to counsel during a 75-minute break in his testimony. (Pet'r's Obj. R&R 10). He primarily argues that, under established precedent, a lunch break is more like an overnight break than a shorter recess. (Pet'r's Obj. R&R 6).

The parties agree about the two cases that control here. In *Geders v. United States*, 425 U.S. 80 (1976), the Supreme Court held that "preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct-and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Id.* at 91. On the other hand, in *Perry v. Leeke*, 488 U.S. 272 (1989), the Supreme Court held that it was constitutionally permissible to prevent the defendant from conferring with his counsel during a fifteen-minute break in his testimony. *Id.* at 280-85.

Here, Ellison was allowed to speak with counsel only on two topics prescribed by the trial judge during a 75-minute lunch break in his testimony. (R&R 10). Clearly then, this case falls in between the bookends established by the Supreme Court in *Perry* and *Geders*. As such, the Magistrate Judge concluded that the Kentucky Supreme Court did not unreasonably decide that a 75-minute break was closer to *Perry* than *Geders*. Ellison now repeats his earlier argument that a lunch break is more like an overnight break during which trial strategy is assessed and altered if

needed.  (Pet'r's Obj. R&R 13-14).  While this may be true in some instances, Ellison's argument

alone is not persuasive enough to convince this Court that the Kentucky Supreme Court

*unreasonably* applied the relevant precedent here.  After all, speaking only in terms of duration,

the 75-minute recess here is much more akin to a 15-minute break than a 17-hour overnight recess.

### D.    Confrontation Clause

The Magistrate Judge concluded, as did the Kentucky Supreme Court, that admitting the

confessions of Ellison's two co-defendants without proper redaction violated the Confrontation

Clause.[1]  (R&R 12).  Even so, the Magistrate Judge and the Kentucky Supreme Court concluded

this mistake was harmless error.  (R&R 14).  Ellison contends, however, that the prejudice to him

was "overwhelming."  (Pet'r's Obj. R&R 18).

In short, the confession of Ellison's co-defendants had little bearing on his case.  Ellison's

trial theory on the complicity to murder charge was one of self-defense.  (R&R 3).  Neither of

Ellison's co-defendants stated that they were in the alley with Ellison when the murder occurred.

*See Ellison v. Commonwealth*, No. 2013-SC-000518-MR, 2014 WL 7238821, at *4 (Ky. Dec. 18,

2014).  Therefore, the confessions of the co-defendants were largely irrelevant since they offered

no information to undermine Ellison's side of the story, namely that he acted in self-defense when

killing Cunningham.

Ellison now contends that the wrongly admitted confessions were the only sources that

proved he was "selling drugs on the day of the shooting," which supports the prosecutor's

argument that Ellison may have killed Cunningham because he was "lower down the drug dealing

food chain."  (Pet'r's Obj. R&R 19).  Ellison himself admitted on cross-examination that he

---

[1] Ellison argues as well that the his trial should have been severed from that of his co-defendants.
This claim is similar to the Confrontation Clause claim and is adequately disposed of by the Court's
analysis on this issue.

engaged in drug-dealing just earlier that month. (R&R 13). Therefore, the prosecution did not need the confessions of Ellison's co-defendants in order to make this motive argument.

Finally, Ellison argues that the confessions demonstrate that he had a gun prior to his encounter with Cunningham, which undermined his story that he did not have a gun and used Cunningham's in self-defense. (Pet'r's Obj. R&R 19). This argument overlooks key facts. Co-defendant Jones's confession stated that the gun *discovered in the car* belonged to Ellison. *Ellison*, 2014 WL 7238821, at *4. As such, this testimony casts no doubt on Ellison's story that he did not have a gun when he entered the alleyway to meet Cunningham.

In conclusion, Ellison has not shown that the Kentucky Supreme Court's harmlessness determination was an unreasonable application of clearly established law.

### E.      Ineffective Assistance of Counsel

Ellison objects to the Magistrate Judge's findings that his trial counsel was not ineffective. (Pet'r's Obj. R&R 20).  Specifically, he argues that his counsel failed to adequately advise him regarding the mistrial and his double jeopardy rights. (Pet'r's Obj. R&R 20).

For an ineffective assistance of counsel claim, the defendant must show (1) deficient performance, and (2) prejudice caused by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ellison's objection here is little more than a recitation of his arguments on appeal, in post-conviction court, and in his pre-R&R memorandums. As already analyzed above, waiving double jeopardy rights and consenting to a mistrial are part of a trial strategy best left in the hands of counsel. Without more, Ellison's counsel cannot be deemed deficient for choosing one tactic over another. Moreover, as further emphasized by the Magistrate Judge, Ellison has not even attempted to demonstrate that, but for counsel's alleged error, the ultimate

7

result would have been different. Therefore, his ineffective assistance of counsel claim is without merit.

### F.   Certificate of Appealability

The Magistrate Judge recommends that a certificate of appealability be denied on all grounds for relief raised by Ellison in his habeas petition because reasonable jurists would not disagree with the court's determinations. (R&R 18). Ellison has made no specific objections to this recommendation, and, based on the above analysis, this Court sees no reason to disagree with the Magistrate Judge.

## VI.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      The Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 18) are **ADOPTED** as and for the opinion of this Court;

2.      Petitioner's Objections (DN 19) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 18) are **OVERRULED**;

3.      Petitioner's Petition for Habeas Relief (DN 1) is **DISMISSED**;

4.      A certificate of appealability is **DENIED** as to each of Petitioner's claims;

5.      Petitioner's Motion for Evidentiary Hearing (DN 16) is **DENIED**.

Greg N. Stivers, Chief Judge

United States District Court

September 30, 2019

cc:    counsel of record

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION
### CIVIL ACTION NO. 3:18-CV-00223-GNS-RSE

ANTONIO GILES ELLISON                                    PETITIONER

VS.

WARDEN KATHY LITTERAL                                    RESPONDENT

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION

      Petitioner, Antonio Giles Ellison ("Ellison"), is a Kentucky prisoner who was convicted by a jury in Jefferson County, Kentucky of the following charges: (1) complicity to murder; (2) facilitation to trafficking in a controlled substance in the first degree while in possession of a firearm; and (3) fleeing or evading police in the first degree. Through counsel, Ellison filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 for relief from his convictions (DN 1) as well as a separate Memorandum (DN 9) in support of his Petition. Respondent, Warden Kathy Litteral ("Warden"), filed a Response in opposition. (DN 10). Ellison subsequently filed a Reply. (DN 15). This matter is ripe for adjudication.

      Pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), the District Court referred this matter to the undersigned Magistrate Judge for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter. (DNs 3 & 11). For the reasons set forth herein, the Court **recommends** that Ellison's Petition for Writ of Habeas Corpus (DN 1) be **DENIED**.

# I.   **FINDINGS OF FACT**

a.   Background

Ellison is currently serving a life sentence for convictions stemming from the fatal shooting of Ricco Cunningham. (DN 9 at Page ID# 30 & 33). Ellison was jointly tried, with two co-defendants, before a Jefferson County, Kentucky jury. (*Id.* at Page ID# 33). The jury returned guilty verdicts against Ellison on all counts. (*Id.*).

In its opinion affirming Ellison's convictions, the Kentucky Supreme Court summarized the underlying facts of the case as follows[1]:

> Around seven p.m. on October 20, 2009, several Louisville Metro Police Officers were engaged in a traffic stop on the interstate 64 on-ramp near Portland and Lytle streets in Louisville. During the traffic stop, the officers heard gunshots from a nearby alley. They observed what was later determined to be a green Mazda leaving the alley. The officers pursued the vehicle in their police cruisers. After the Mazda eventually stopped, the [Petitioner] "T.J." Ellison exited the vehicle and fled the scene. One of the officers unsuccessfully pursued him on foot. The officers remaining at the scene arrested the vehicle's driver, Cli[f]ton Jones, and the backseat passenger, Dontay Rice. A revolver, a small amount of cocaine, and multiple cell phones were discovered in the vehicle.
>
> The body of the victim, Ricco Cunningham, was found in the alley from which the Mazda had exited. He died as a result of two gunshot wounds to the face. Ellison was eventually apprehended and arrested.
>
> Ellison was indicted by a Jefferson County grand jury for complicity to murder; complicity to first-degree trafficking in a controlled substance while in possession of a firearm; and first-degree fleeing or evading the police. Jones and Rice were indicted for complicity to murder; complicity to first-degree trafficking in a controlled substance while in possession of a firearm; and possession of a handgun by a convicted felon. Jones was additionally charged with operating a motor vehicle without a license. Rice, Jones, and Ellison were all tried together.
>
> The first jury trial began on November 29, 2011, and resulted in a mistrial. The second joint trial took place in February, 2013. Upon conclusion of the second trial, a Jefferson Circuit Court jury found Ellison guilty of complicity to murder;

---

[1] On a petition for habeas corpus brought pursuant to 28 U.S.C. § 2254, a presumption exists that the factual findings of the state court are correct absent clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because Ellison does not challenge the factual findings from his direct appeal, this Court will adopt the Kentucky Supreme Court's recitation of the relevant facts.

facilitation to first-degree trafficking in a controlled substance while in possession of a firearm; and first-degree fleeing or evading the police. The jury recommended a sentence of life imprisonment for the complicity to murder conviction, 12 months for the facilitation to trafficking conviction, and three years for the fleeing or evading conviction. All sentences were ordered to run concurrently for a total sentence of life imprisonment.

*Ellison v. Commonwealth*, No. 2013-SC-000518-MR, 2014 WL 7238821, at *1 (Ky. Dec. 18, 2014) ("*Ellison I*").

### b.  Procedural History

Ellison directly appealed his convictions to the Kentucky Supreme Court, alleging five claims of error: (1) violation of the Fifth Amendment's prohibition against double jeopardy after Ellison's first trial ended in a mistrial; (2) violation of Ellison's Sixth Amendment right to counsel when the trial court limited Ellison's ability to consult with counsel during a lunch break; (3) the trial court erred in denying Ellison a separate trial from his nontestifying co-defendants, in violation of *Bruton*; (4) the admission of Ellison's nontestifying co-defendants' statements was a violation of the Confrontation Clause; and (5) the trial court erred in giving a limiting instruction *sua sponte* regarding alleged prior misconduct by Ellison. *See* (DN 1 at Page ID# 2) *and* (DN 10-2 at Page ID #106). The Kentucky Supreme Court affirmed the Jefferson Circuit Court judgment in its entirety, *Ellison I* at *6, and subsequently denied Ellison's petition for rehearing. (DN 10-2 at Page ID #253).

Thereafter, Ellison filed a motion in Jefferson Circuit Court to vacate, set aside, or correct his sentence, pursuant to Kentucky Criminal Rule 11.42. *See Ellison v. Commonwealth*, No. 2016-CA-000393-MR, 2017 WL 1829717, at *2 (Ky. Ct. App. May 5, 2017) ("*Ellison II*"). In considering this collateral attack, the circuit court denied Ellison's sole claim of ineffective assistance of counsel and determined that an evidentiary hearing was not required to adjudicate the RCr 11.42 motion. *Id*. Ellison appealed, and the Kentucky Court of Appeals affirmed the circuit

3

court's denial of Ellison's RCr 11.42 motion. *Id*. at *3. Ellison subsequently moved for discretionary review, which the Kentucky Supreme Court ultimately denied. (DN 10-3 at Page ID# 352).

Finally, Ellison timely filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.§ 2254, asserting four grounds for relief.

## II.   CONCLUSIONS OF LAW

a.   Standard of Review

The federal habeas statute, as amended in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides relief from a state conviction if the petition satisfies one of the following conditions:

> The [state court's] adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States has carefully distinguished federal habeas review from review on direct appeal. As to § 2254(d)(1), when the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010). Instead, the Court must ask "whether

4

the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Id.* at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the petition if (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." *Id.* at 405-06, 412-13.

As to § 2254(d)(2), a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). This subsection applies when a petitioner challenges the factual determinations made by the State court. *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001) (challenging the state court's determination that the evidence did not support an aiding and abetting suicide instruction); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (challenge to state court's factual determination that Sheriff has not seen letter prior to Clark's trial).

Recently, the Supreme Court clarified that in making the § 2254(d)(1) determination, a federal court in habeas corpus must confine its review to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Courts have since held that *Pinholster* logically applies to any § 2254(d)(2) determination as well. *See, e.g., Sanders v. Curtin*, 529 F. App'x 506, 517 n. 5 (6th Cir. 2013) ("Although *Pinholster* specifically addressed subsection (d)(1), subsection (d)(2), by its terms, also requires a federal court to limit its review to the record that was before the state court.").

b.   Discussion

5

Following the state court's denial of his direct appeal, Ellison did not seek further review of the Kentucky Supreme Court's decision by filing a petition for certiorari in the United States Supreme Court. (DN 1 at Page ID# 3). Rather, on April 10, 2018, Ellison filed the instant Petition for Writ of Habeas Corpus. (*Id.*). In the Petition, Ellison presents essentially the same issues that were presented to the Kentucky Supreme Court on direct appeal. Thus, in light of the deference due to the state court upon review of a petition brought pursuant to 28 U.S.C. § 2254, the state court's opinion will be quoted from liberally.

## i. Ellison's Claims from Direct Appeal

### 1. Ground One – Double Jeopardy

In his Petition, Ellison's first ground for habeas relief alleges that Ellison's second trial was barred after the trial court, absent a finding of manifest necessity, granted a mistrial without a knowing, voluntary waiver of Ellison's double jeopardy rights. (DN 1 at Page ID# 5); *see also* (DN 9 at Page ID# 35). In other words, Ellison claims that the trial court's colloquy with Ellison's trial counsel was inadequate, and therefore Ellison's double jeopardy waiver was insufficient. (*Id.* at Page ID# 37). Thus, because Ellison never requested nor consented to the motion for a mistrial, and absent manifest necessity, the retrial of Ellison was barred. (*Id.*).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794 (1969), "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *U.S. v. Dinitz*, 424 U.S. 600, 606 (1976). "As part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'" *Oregon v. Kennedy*, 456 U.S. 667, 671–72 (1982) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). Jeopardy

6

attaches when the original jury panel is seated and sworn. *Crist v. Bretz,* 437 U.S. 28, 38 (1978). However, the Double Jeopardy Clause does not act as an absolute bar to reprosecution in every case. Rather, once jeopardy attaches, a defendant may not be retried after a mistrial has been declared unless (1) there is a "manifest necessity" for a mistrial, or (2) the defendant either requests or consents to a mistrial. *Dinitz,* 424 U.S. at 606–07; *see also Watkins v. Kassulke,* 90 F.3d 138, 141 (6th Cir. 1996).

Applying these principles to Ellison's claim on direct appeal, the Kentucky Supreme Court determined that there was no jeopardy violation. *Ellison I* at *2. More specifically, the court noted that "[p]rior to the trial court's order granting a mistrial in the present case, Ellison's counsel expressly stated the following regarding the double jeopardy issue: 'just to make sure that the record is clear, yes, we do waive that argument as it relates to double jeopardy for mistrying the case to this jury.'" *Id.* Of particular significance, the Kentucky Supreme Court observed that Ellison's trial counsel "also stated he had advised Ellison of the [double jeopardy] issue and that Ellison was present during the proceedings. Therefore, the record unequivocally demonstrates that Ellison's counsel consented to this mistrial on behalf of his client." *Id.*

That notwithstanding, Ellison's Petition maintains his argument that the double jeopardy waiver in this case was deficient. (DN 9 at Page ID# 37). Additionally, Ellison contends that the constitutional right against jeopardy is a fundamental protection that a defendant must knowingly and voluntarily waive. *Id.* In rejecting this argument on direct appeal, the Kentucky Supreme Court noted that because "Ellison [] failed to present any authority stating that the double jeopardy defense cannot be waived through counsel[,] . . . the trial court did not err by denying Ellison's motion to dismiss double jeopardy grounds." *Ellison I* at *2.

7

The Supreme Court has recognized four fundamental choices that a criminal defendant must always make. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to [1] plead guilty, [2] waive a jury, [3] testify in his or her own behalf, or [4] take an appeal."). Consequently, decisions regarding a motion for a mistrial are not "fundamental decisions" that can only be made by the defendant. *See Davis v. Holloway,* No. 3:14-02348, 2015 WL 5882326, at *4 (M.D. Tenn. Oct. 8, 2015). Rather, the Supreme Court "has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." *Dinitz,* 424 U.S. at 609, n. 11 (1976). Thus, the Sixth Circuit, citing *Jones,* recognized that where "defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant and removes any bar to reprosecution, regardless of whether the defendant participates in the decision." *Watkins,* 90 F.3d at 143. A survey of case law in other circuits shows that every other circuit to have addressed this issue has adhered to the Sixth Circuit's position on "fundamental decisions" set forth in *Jones* and *Watkins. See United States v. Chapman,* 593 F.3d 365, 368 (4th Cir. 2010) (concluding that "decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client."); *United States v. Allick,* 386 Fed. App'x 100, 104-05 (3d Cir. 2010) (rejecting Allick's argument challenging a mistrial on the ground that he was neither present during the in-chambers conference discussing mistrial nor consulted regarding the mistrial. Like other circuits, the Third Circuit held that the decision "to request or consent to a mistrial is a strategic decision that ultimately rests with counsel."); *United States v. Burke,* 257 F.3d 1321, 1324 (11th Cir. 2001) ("We . . . reject Defendant's contention that the decision to request a mistrial is a fundamental decision that only a defendant can make."); *United States v. Washington,* 198 F.3d 721, 723 (8th

8

Cir. 1999) ("Washington argues that the defendant must be allowed to make the ultimate decision on whether to request a mistrial. We disagree and hold that the decision to make such a request is a strategic decision for counsel."); *Galowski v. Murphy,* 891 F.2d 629, 639 (7th Cir. 1989) ("The decision whether to move for a mistrial or instead proceed to judgment with the expectation that the client will be acquitted is one of trial strategy."). Therefore, decisions regarding mistrials belong to the attorney, not the client; and the consent of counsel is treated as the consent of the defendant. *See* C. Torcia, 1 Wharton's Criminal Law § 63 (15th ed. 2018); a*ccord United States v. Williamson*, 656 Fed. App'x 175, 180 (6th Cir. 2016) ("Generally, consenting to a mistrial is a strategic decision that an attorney can make without asking for the defendant's input."); *Pryor v. Bock*, 261 F. Supp. 2d 805, 809 (E.D. Mich. 2003), *aff'd*, 116 Fed. App'x 565 (6th Cir. 2004) ("Moreover, acting on a defendant's behalf, counsel may provide the requisite consent [to a mistrial].").

Accordingly, the Kentucky Supreme Court's determination that Ellison's retrial was not barred by the Double Jeopardy Clause of the Fifth Amendment because Ellison consented to the granting of the mistrial and explicitly waived, through his counsel, any double jeopardy defense was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were the court's decisions based on an unreasonable determination of the facts. Therefore, Ellison's first ground for relief in his habeas Petition is without merit, and the Court recommends denying this claim.

## 2. Ground Two – Right to Counsel

In his second ground for habeas relief, Ellison claims that he was denied his Sixth Amendment right to counsel when the trial court limited his ability to consult with counsel during a break in his testimony at trial. (DN 1 at Page ID# 7); *see also* (DN 9 at Page ID# 38). Following

9

Ellison's direct testimony and cross-examination by counsel for one of Ellison's co-defendant's, the trial court recessed for lunch. *Ellison I* at *3. During the break, the trial court restricted the subject of conversation between Ellison and his counsel to two topics the court considered "fair game:" (1) Ellison's previous conviction for carrying a concealed deadly weapon, a 9 mm; and (2) jail phone calls the Commonwealth sought to introduce. *Id. See also* (DN 9 at Page ID #38).

In dismissing this claim on direct appeal, the Kentucky Supreme Court held that the trial court did not err in restricting Ellison's ability to consult with counsel because Ellison did not have a constitutional right to discuss his testimony with his attorney while his testimony was in progress. *Ellison I* at *3. In its opinion, the Kentucky Supreme Court analyzed two precedential cases. First, the court addressed *Geders v. United States*, 425 U.S. 80 (1976), in which "the United States Supreme Court [] held that a court cannot prevent a criminal defendant from having any consultation with his attorney during an overnight recess." *Ellison I* at *3 (citing *Geders*, 425 U.S. at 91). Almost contrastingly, the state court also discussed *Perry v. Leeke*, 488 U.S. 272 (1989), in which the Supreme Court held that "it is constitutionally permissible for a trial court to bar a testifying defendant from consulting with his attorney during a briefer recess." *Ellison I* at *3 (citing *Perry*, 488 U.S. at 283-84). In either situation, the state court noted that "consultations with counsel concerning a defendant's ongoing testimony are not permitted. In [Ellison's] case, the jury's lunch recess lasted for approximately 75 minutes. Therefore, this case is much more analogous to a brief recess as in *Perry* rather than the overnight recess in *Geders*." *Ellison I* at *3 (internal citation omitted). Accordingly, the Kentucky Supreme Court found "that the trial court's admonition to counsel did not violate Ellison's Sixth Amendment right to counsel." *Id.*

In light of the above-quoted portion of the Kentucky Supreme Court's opinion, it is clear that the court did not unreasonably apply clearly established federal law. First, the Kentucky

10

Supreme Court correctly looked to *Geders* and *Perry* to resolve Ellison's Sixth Amendment right to counsel claim. *Id.* Ultimately, the state court found that *Geders* was distinguishable because the facts presented in Ellison's case did not involve the trial court's complete denial of a defendant's right to consult with his attorney, as was evident in *Geders*. *Id.* (citing *Beckham v. Commonwealth*, 248 S.W.3d 547, 553 (Ky. 2008)). Rather, the trial court "merely qualified the issues which were proper for discussion and correctly excluded consultation regarding Ellison's testimony" in an attempt "to protect the integrity of the proceedings" and "not impermissibly limit all attorney-client contact during the . . . recess." *Ellison I* at *3 (quoting *Beckham*, 248 S.W.3d at 553-54).

Second, *Perry* explains that "when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying." *Perry*, 488 U.S. at 281. Although the defendant "has an absolute right to [] consultation before he begins to testify, [] neither [the defendant] nor his lawyer has a right to have the testimony interrupted in order to give [the defendant] the benefit of counsel's advice." *Id.* Consequently, the United States Supreme Court held that a defendant does not have "a constitutional right to discuss [his] testimony while it is in process." *Id.* at 284; *see also Moore v. Parker*, 425 F.3d 250, 255 (6th Cir. 2005) (extending *Perry* to include admonition given to defendant during 45-minute lunch break not to consult with anyone about his testimony). Thus, the Kentucky Supreme Court correctly upheld the trial judge's prohibition from discussing Ellison's testimony during the 75-minute lunch recess. *Ellison I* at *3.

Accordingly, as Ellison did not have a constitutional right to consult with his attorney while his testimony was in progress, the Kentucky Supreme Court's decision was neither contrary to, nor an unreasonable application of clearly established federal law. Therefore, the Court recommends that relief be denied as to this claim.

3. Ground Three – Confrontation Clause

11

Ellison's third ground for habeas relief claims that the "trial court erred in denying Ellison's motion for a separate trial from his non-testifying co-defendants, whose statements to the police, incriminating Ellison, were admitted at trial." (DN 1 at Page ID# 8); *see also* (DN 9 at Page ID# 44). More specifically, Ellison argues that Jones' and Rice's statements, which "simply substitute[ed] '[Li'l] Mikey' for 'Antonio Ellison,'" were not sufficiently redacted and thus, the admission of those statements violated the Confrontation Clause of the Sixth Amendment. (*Id.* at Page ID# 46-47). In the Response, the Warden notes that "Ellison – in what appears to be a rearranged regurgitation of his direct appeal brief to the Kentucky Supreme Court – fails to recognize that [the state] court agreed there was a confrontation violation, but the violation was harmless beyond a reasonable doubt." (DN 10 at Page ID# 82). In Reply, Ellison beefs up his claim and argues that the confrontation violation was not harmless. (DN 15 at Page ID# 364). Rather, "the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" (*Id.*) (quoting *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

In the context of habeas review, petitioners are generally not entitled to relief based on a constitutional error at trial unless "they can establish that [the error] resulted in 'actual prejudice.'" *Brecht,* 507 U.S. at 637 (citing *United States v. Lane,* 474 U.S. 438, 449 (1986)); *see Fry v. Pliler,* 551 U.S. 112, 121 (2007) (stating that the *Brecht* standard of review is still applicable post-AEDPA). Under the *Brecht* standard, actual prejudice is present and thus "an error requires reversal only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht,* 507 U.S. at 631 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). Accordingly, "Confrontation Clause errors are subject to harmless-error analysis." *Vasquez v. Jones,* 496 F.3d 564, 574 (6th Cir. 2007).

12

To determine whether a Confrontation Clause error is harmless under *Brecht,* courts use the factors discussed in *Delaware v. Van Arsdall,* 475 U.S. 673 (1986). *Vasquez,* 496 F.3d at 575. The *Van Arsdall* factors include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Van Arsdall,* 475 U.S. at 684.

Applying these factors to this instance, we cannot conclude that the confrontation violation at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 631. As the Kentucky Supreme Court correctly observed, "[w]hile the references to 'Li'l Mikey' constitute insufficient redaction, this error is harmless beyond a reasonable doubt." *Ellison I* at *4. Thus, in analyzing Ellison's argument on direct appeal, the court considered the information provided via admission of the improperly redacted statement as well as the following information provided directly by Ellison at trial:

> Ellison's trial theory was self-defense. He testified that he was the person sitting in the front passenger seat of the Mazda and that he contacted the victim on the night of the murder in order to buy drugs from him. On cross, he admitted that he had recently engaged in narcotics trafficking during the month of October, 2009. Ellison also admitted to fleeing from the police after the murder. While fleeing, he discarded the 9 mm hand gun that was used to kill the victim. A forensic expert determined that the two shell casings found near the victim's body were fired from that weapon. Evidence was also introduced that, while in jail awaiting trial, Ellison wrote letters and made phone calls attempting to enlist his friends to take action that would prevent a key witness from testifying.

*Id*. Furthermore, the Kentucky Supreme Court noted that "[t]he trial court also admonished the jury that certain evidence may be considered for one defendant but not for another, and repeatedly instructed the jury concerning the appropriate use of the co-defendants' statements prior to the admission of each." *Id*. For these reasons, although the Court agrees that there was a Confrontation

13

Clause violation, the Court concludes that to the extent that Ellison's non-testifying co-defendants' statements had any influence on the jury, such information was corroborated by other evidence and witnesses, including Ellison himself.

Accordingly, because the trial court's confrontation violation did not have a substantial and injurious effect or influence in determining the jury's verdict under the *Brecht* standard, the Court finds that the error was harmless. Therefore, the Court will not recommend relief on this claim.

### ii. Ellison's Post-Conviction RCr 11.42 Claim

Ellison's habeas Petition also raises a single claim of ineffective assistance of trial counsel that he originally raised in his RCr 11.42 motion for post-conviction relief. (DN 1 at Page ID# 10). Claims of ineffective assistance of counsel are evaluated under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland*, 466 U.S. at 687. The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 688, 690. Surmounting *Strickland's* high performance bar is never an easy task. *Premo v. Moore*, 562 U.S. 115, 122 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When the Court assesses counsel's performance, it must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not

14

whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Establishing the required prejudice is a likewise high bar. The prejudice inquiry compels the defendant "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one part. *Id*. at 697.

### 4. Ground Four – Ineffective Assistance of Counsel

In his original RCr 11.42 motion, Ellison alleged that his trial counsel was ineffective for "failing to adequately advise [Ellison] regarding the mistrial, and waiving his Double Jeopardy rights without [Ellison's] informed consent . . . without which, [Ellison] would not have been convicted and sentenced to life in prison." (DN 10-3 at Page ID# 260-61). Ellison maintains that had trial counsel "not waived his objection to the mistrial, there is a 'reasonable probability' that the Double Jeopardy Clause of the United States and Kentucky Constitutions would have prohibited [Ellison's] retrial." (*Id*. at Page ID# 261). The circuit court, however, denied this claim, explaining that there was no necessity for a hearing on this issue because the Kentucky Supreme Court already tendered a ruling upholding Ellison's conviction. (*Id*. at Page ID# 268). In citing to the Kentucky Supreme Court's opinion, the court concluded that "the very argument made to [the court] has been addressed by the highest judicial authority in the Commonwealth, the Kentucky Supreme Court (KSC). There it was asserted, as it is here now, that [Ellison] did not consent to waiving his putative double jeopardy defense. The KSC said it doesn't matter. That ends the discussion." (*Id*. at Page ID# 269).

15

Ellison's claim evolved when he sought review of the circuit court's denial from the Kentucky Court of Appeals. In his plea to the Kentucky Court of Appeals, Ellison argued that the trial court erred in summarily overruling his RCr 11.42 motion without a[n evidentiary] hearing, because [Ellison] presented a meritorious claim of ineffective assistance of counsel supported by specific facts. (*Id.* at Page ID# 278). Ellison further provided that "[a] hearing is required if there is a 'material issue of fact that cannot be determined on the face of the record.'" (*Id.* at Page ID# 280) (citing RCr 11.42(5) *and Hodge v. Commonwealth*, 68 S.W.3d 338, 342 (Ky. 2001)). However, upon consideration of Ellison's argument, the Kentucky Court of Appeals determined that the Kentucky Supreme Court's opinion was a proper basis for the circuit court's denial of Ellison's RCr 11.42 motion. *Ellison II* at *3. More specifically, the Kentucky Court of Appeals noted that the "Kentucky Supreme Court expressly found that [Ellison's trial] counsel's waiver of the double jeopardy defense was efficacious, i.e., *not erroneous*." *Id.* (emphasis in original). Consequently, "[a]s a serious error is a necessary prerequisite to a finding of ineffective assistance and as no error can be found on this issue, [Ellison's] claim of ineffective assistance must necessarily fail." *Id.* The Kentucky Court of Appeals went on to provide that "even if such an error were present, [Ellison] has offered no basis for concluding that the outcome of the proceeding would have been different but for the purported error." *Id.* Accordingly, the Kentucky Court of Appeals was "not persuaded by [Ellison's] contention that the instant argument is fundamentally different from the issue addressed on direct appeal. Finally, as [Ellison's RCr 11.42] Motion was justiciable from the face of the record, no hearing was required. Accordingly, [the Kentucky Court of Appeals found] no error." *Id.*

Now, in his fourth and final ground for habeas relief, Ellison attempts to revive his original argument to the trial court, claiming that he was denied effective assistance of counsel when his

trial counsel failed to adequately advise him regarding the mistrial and ultimately waived Ellison's double jeopardy rights without his informed consent. (DN 1 at Page ID# 10); *see also* (DN 9 at Page ID# 50). Because of this alleged failure, Ellison claims that "this basic trial choice, involving a decision regarding the objectives of the representation," was not properly waived because trial counsel failed to first obtain Ellison's "fully-informed and publicly-acknowledged consent." (*Id.* at Page ID# 52).

The post-conviction court correctly identified *Strickland* as controlling with respect to Ellison's ineffective assistance ground for relief. *Ellison II* at \*2-3. Thus, in analyzing *Strickland's* deficient performance prong, the Court notes that, as provided above, the Sixth Circuit has held, *inter alia*, that "consenting to a mistrial is a strategic decision that an attorney can make without asking the defendant's input." *Williamson*, 656 F. App'x at 180 (citing *Watkins*, 90 F.3d. at 143). Hence, trial counsel's performance was not deficient, and Ellison's claim must fail. *See Ellison II* at \*3.

That notwithstanding, the Court also notes that pursuant to *Strickland's* prejudice prong, Ellison has not demonstrated that there is a reasonable probability that, but for trial counsel's alleged error, the result of his proceeding would have been different. *Strickland*, 466 U.S. at 649; *see also Ellison II* at \*3. Again, Ellison's claim is simply without merit.

Accordingly, Ellison does not prove the Kentucky Court of Appeals' decision was contrary to or an unreasonable application of *Strickland*. Therefore, because Ellison's fourth and final ground for relief fails to meet the standard for granting the Writ under § 2254(d), the Magistrate Judge recommends denying relief on this claim.

iii. Certificate of Appealability

17

The final question is whether Ellison is entitled to a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B) on any or all of the four grounds raised in his habeas Petition. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). When the Court rejects a claim on the merits, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong for this Court to issue a COA. *Slack*, 529 U.S. at 484.

Here, none of the grounds raised by Ellison could be debated by reasonable jurists. The Kentucky Supreme Court's determinations regarding Ellison's rights under the Fifth Amendment's Double Jeopardy Clause and the Sixth Amendment's right to counsel are well in-line with the controlling precedent of the United States Supreme Court. Ellison does not explain otherwise or cite to any decision that would call these conclusions into question. Therefore, the Court does not recommend a COA issue as to Grounds One and Two of Ellison's Petition.

Ellison's remaining claim from his direct appeal, the Confrontation Clause claim, is also not likely to be found debatable or wrong by reasonable jurists. Ellison has not made a substantial showing that the confrontation violation was not harmless, and thus, the Court does not recommend a COA issue as to Ground Three.

Likewise, the Court finds the assessment of Ellison's ineffective assistance of counsel claim under *Strickland* would not be challenged by reasonable jurists because Ellison cannot demonstrate deficient performance or establish prejudice from counsel's alleged error. As such, the Court does not recommend a COA issue as to Ground Four.

Accordingly, the Court recommends that a COA be denied as to all grounds for relief raised by Ellison in his habeas Petition.

18

iv.  Evidentiary Hearing

Approximately one year after Ellison initially filed the subject Petition for Writ of Habeas Corpus (DN 1), Ellison, through counsel, subsequently filed a Motion for Evidentiary Hearing. (DN 16). In the Motion, Ellison reiterates his request for the Court to grant habeas relief pursuant to 28 U.S.C. § 2254, or, in the alternative, Ellison requests an evidentiary hearing on his Petition. (*Id*. at Page ID# 368). In support of this Motion, Ellison claims that an evidentiary hearing would permit the opportunity to establish facts in the record that would advance his claims for habeas relief. (*Id*.).

In opposition, Warden timely filed a Response to Ellison's Motion for Evidentiary Hearing. (DN 17). In the Response, Warden maintains that the claims raised in Ellison's Petition were adjudicated on the merits in state court. (*Id*. at Page ID# 371, 374). Therefore, an evidentiary hearing is not proper because Ellison's claims for habeas relief are subject to deference based solely on the record as it was before the state court (*Id*. at Page ID# 376).

A federal district court sitting to consider a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 has the inherent discretion to order an evidentiary hearing when disputed issues of material fact otherwise cannot be resolved from examination of the state court record. *See Sawyer v. Hofbauer*, 299 F.3d 605, 609-10 (6th Cir. 2002) ("We have previously recognized the discretion and 'inherent authority that a district court always has in habeas cases to order evidentiary hearings to settle disputed issues of material fact.'") (quoting *Abdur'Rahman v. Bell*, 226 F.3d 696, 706 (6th Cir. 2000)).

Upon review of Ellison's Motion for Evidentiary Hearing, the Court, in the exercise of its discretion, concludes that such a hearing is neither required nor warranted under Rule 8 of the Rules Governing § 2254. The state court record as it presently exists is more than sufficient for the

Court to thoroughly address the claims asserted in support of Ellison's Motion as well as his habeas Petition. Further, Ellison's Motion fails to specify what facts would be established by an evidentiary hearing and how they might entitle him to relief. *See Williams v. Bagley*, 380 F.3d 932, 936 (6th Cir. 2004) (citing *Stanford* v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) ("[T]he district court did not abuse its discretion in denying Williams's request, given his failure to specify which of his claims warranted an evidentiary hearing and what could be discovered through an evidentiary hearing."). Thus, Ellison has not persuaded the Court that were such an evidentiary hearing to be held, he might establish facts that would entitle him to relief on any of the grounds raised in his Petition.

Accordingly, Ellison's Motion for an Evidentiary Hearing (DN 16) must be denied.

### III.   RECOMMENDATION

For the reasons provided above, and the Magistrate Judge, having made findings of fact and conclusions of law, **recommends** that Ellison's Petition for Writ of Habeas Corpus (DN 1) be **DENIED**.

The Court further **recommends** that a Certificate of Appealability be **DENIED** as to each of Ellison's claims.

Additionally, the Court also **recommends** that Ellison's Motion for Evidentiary Hearing (DN 16) be **DENIED**.

Regina S. Edwards, Magistrate Judge
United States District Court

May 2, 2019

20

## NOTICE

    Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn,* 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).


Copies:      Counsel of Record

# PRIORITY
## MAIL
# EXPRESS®

## FLAT RATE
## ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

PS10001000006

EP13F July 2022
OD: 12 1/2 x 9 1/2

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments.

RECEIVED

MAR 0 1 2024

45202     $30.45

RDC 07     R2305P150577-31

KELLY HEMPHILL

FOR DOMESTIC AND INTERNATIONAL USE
PLACE MAILING LABEL HERE



UNITED STATES
POSTAL SERVICE®     PRIORITY
MAIL
EXPRESS®

EI 095 309 378 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)     PHONE (   )

Antonio Ellison #262067
Southeast State Correctional Complex
327 Correctional Drive
P.O. Box 1600
Wheelwright, KY 41669

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED
☐ No Saturday Delivery
☐ Sunday/Holiday Delivery Required

TO: (PLEASE PRINT)     PHONE (   )

Sixth Circuit Court of Appeals
Clerk's office
Room 540, Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, OH 45262

45202

**PAYMENT BY ACCOUNT** (if applicable)

42023     3-1-24     30.45

12924     6pm

1240

1     30.45




PEEL FROM THIS CORNER

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  March 05, 2024

Antonio Giles Ellison
Southeast State Correctional Complex
P.O. Box 1600
Wheelwright, KY 41669

Mr. Todd D. Ferguson
Office of the Attorney General
of Kentucky
1024 Capital Center Drive
Suite 200
Frankfort, KY 40601

Re:  Case No. 24-5193, *In re: Antonio Ellison*
Originating Case No. : 3:18-cv-00223

Dear Movant and Counsel,

   The Movant's application under 28 U.S.C. § 2244 for permission to file a second or
successive habeas petition has been docketed as case number **24-5193**. The case number must
appear on all filings.

   Counsel for the respondent is expected to file a response electronically with the Clerk's office
by **March 19, 2024**.  If the respondent chooses not to file a response, a letter saying so and why
must be filed by the deadline.

   When the court issues its decision in this matter, the Clerk's office will send a copy to all
parties.  Pursuant to § 2244(b)(3)(E), that decision is final and not subject to a petition for
rehearing or rehearing en banc.

                         Sincerely yours,

                         s/Sharday S. Swain
                         Case Manager
                         Direct Dial No. 513-564-7027